Trenton Water Power Co. v. Raff.

---

THE TRENTON WATER POWER COMPANY v. WILLIAM RAFF, DANIEL RAFF AND BENJAMIN F. RAFF.

1. In an action to recover damages from flowage by back water, a request to charge that a dam which had been in existence for forty years, was a legal structure, was properly refused, where there was some question whether its maintenance had been peaceably acquiesced in. The court should have been asked to leave to the jury the question whether the dam had been maintained for the prescriptive period, under such circumstances as to give a right by prescription.

2. Immunity from liability to actions for injuries resulting to individuals from acts done under legislative authority, extends only to such injuries as arise incidentally from acts done under a valid act of the legislature, by persons acting with due skill and caution within the scope of their authority, in the execution of a public trust for the public benefit.

3. An action will lie to recover damages for an injury to property in the execution of work under legislative authority, if the injury be direct, or the work be done for the benefit of an individual or corporation with private capital, and for private emolument, even though the public be incidentally benefited by it.

4. An act of the legislature, authorizing one to erect a dam in a river which is a public highway, may be a justification so far as public interests are concerned, but will be no justification for a private injury, caused by the overflow of lands of an individual proprietor.

5. The destruction of private property, either total or partial, or the diminution of its value by the act of the government directly, and not merely incidentally affecting it, which deprives the owner of the ordinary use of it, is a taking within the constitutional provision which can only be exercised under the right of eminent domain, on just compensation made.

6. The legislature cannot deprive an individual of the advantages of a stream of water in its natural flow over his lands, or create an easement in his lands of the right to overflow, without providing compensation for the injury.

On error to Mercer Circuit.

Argued at June Term, 1872, before the CHIEF JUSTICE, and Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For the plaintiff in error, *E. T. Green.*

For the defendants, *F. Kingman.*

The opinion of the court was delivered by

DEPUE, J.   The plaintiffs sue in an action of trespass on the case to recover damages for an injury to their mill by back water, caused by a dam maintained by the defendants.   The plaintiffs' mill is situate on, and driven by the waters of Jacob's creek, a natural watercourse, emptying into the Delaware river.   The defendants' dam was erected across the river, below the place at which the waters of the creek are discharged into the river, by reason whereof the waters of the river and creek were penned back and thrown upon the wheel of the plaintiffs' mill.

The defendants were incorporated by an act of the legisla ture of this state, entitled " An act to incorporate a company to create a water power at the city of Trenton, and for other purposes," passed on the 16th of February, 1831.   *Acts,* 1831, p. 131.   Among other powers granted, the company were authorized to erect a wing dam in the Delaware river, between the mouth of the Assanpink and the head of Wells'

Falls, in order to divert the waters of the river into a race-way, whereby they would be carried to Trenton, and there used as a water power for mills and manufacturing purposes, with proviso that such wing dam should be so constructed as not to impede the passage of fish, rafts, arks and boats in said river. Shortly after the incorporating act was passed, the company threw up a dam, constructed of stone and timber, at the place in question, which was continued until 1867, when the erection of a new wooden dam was begun, which was completed to its present height and efficiency in 1869. In 1870 the plaintiffs brought an action against the defendants to recover damages for the back flowage on their mill, caused by the present dam, and recovered a verdict with an assessment of damages for the injury to the 3d of February, 1870. The present suit is for damages resulting from the same cause, between the 3d of February, 1870, and the 20th of May, in the same year. The plaintiffs, at the trial, relied on the recovery in the former action to establish their right and fix the liability of the defendants. They recovered a verdict, and a judgment which was removed to this court by a writ of error, on exceptions taken at the trial.

The exceptions to the charge of the court are founded on the refusal to charge as requested : 1. That the old dam was a legal structure, and so far as defendants were concerned, they could not complain of it, as it had existed for more than twenty years before they purchased the premises affected by it. 2. That the plaintiffs were entitled to recover, if anything, only for the excess of damages occasioned by the new dam, beyond what would have resulted from the old dam.

The refusal to make this charge was proper. The request assumed that the old dam was a legal structure. The mere fact that this dam had existed for forty years, did not, as a question of law, make it a lawful structure. Whether the defendants had acquired a prescriptive right to flow the plaintiffs' land the height to which the water was held by the old dam by an adverse user, continued uninterruptedly for the period of prescription, was a question open for controversy in

the cause. The proof was, that its maintenance had not been peaceably acquiesced in, and that on one occasion at least, within nineteen years before the trial, it had been torn out by persons who felt aggrieved by its existence. The court should have been asked to leave the question to the jury, whether the old dam had been maintained for the prescriptive period, under such circumstances as would give a right by prescription, with the instruction that if it had been so maintained, the plaintiffs were entitled to damages only for the injury in excess of that which resulted from the old dam. The request to charge as presented by counsel was properly denied.

The exception mainly relied on, is that taken to the refusal of the court to permit the defendants to show that the present dam was a legal structure by force of an act of the legislature of the State of Pennsylvania, passed March 15th, 1866, entitled "An act to improve the navigation of the Delaware river, for the running of lumber," having been erected by commissioners named in that act. In connection with this offer, the defendants proposed also to rely on an act of the legislature of this state, passed on the 22d of February, 1870. The court excluded both of these acts from being evidence in the cause.

The act of the legislature of the State of Pennsylvania was passed before the former suit was commenced, and its efficacy as a justification for the act, which is the gravamen of the present suit, was then put in issue, and decided adversely to the defendants. The former adjudication of the insufficiency of that legislation to legalize the structure, is conclusive on the parties in the present suit. It can have no effect in this cause, except such as is derived from the recital in the preamble to the act of the legislature of this state. The act has been laid before us, and it may be remarked that the power granted to the commissioners, was to remove obstructions in the channel, or otherwise improve the navigation, subject to a proviso that they did no injury to private property.

At the former trial, the defence was mainly directed to the question, whether the present dam was erected by the defend-

ants.   That question, with others, was conclusively settled by
the former verdict and judgment, and cannot be re-opened for
litigation in the present suit.   No evidence was offered on that
subject in this suit by the plaintiffs.

The New Jersey act became a law after the former action
was commenced.   The present case is narrowed down to the
consideration of the effect of that act upon the subject matter
of this litigation, as the rights of the parties were determined
by the former suit.

The title of the latter act is, " An act relative to the Tren-
ton Water Power Company."   In the preamble it is recited
that, whereas the commissioners appointed by the State of
Pennsylvania, for the improvement of the navigation of the
river Delaware, have restored and improved the dam erected
many years ago at Scudder's Falls, by commissioners duly
appointed for that purpose, and connected the same with the
wing dam of the Trenton Water Power Company, whereby
the navigation of the said river has been greatly improved,
and the supply of water to the raceway of said company been
made sufficient for the various mills depending thereupon for
power; and whereas, the tenure of office of the said commis-
sioners has expired, and it is desirable that the said improve-
ments should be permanently maintained and protected from
damage.   The enacting clause is as follows: that the Tren-
ton Water Power Company is hereby authorized, empowered
and required to maintain and protect the said dam at Scud-
der's Falls, and the shute or passage way therein for rafts,
boats and fish, as now constructed, so that the navigation of
the river, and the supply of water to the raceway of the said
company may be secured and maintained.   *Acts*, 1870, *p.*
255.

The present action is for the maintenance of the dam.   The
contention of counsel on the argument was, that the dam
having been erected by public officers, in pursuance of legis-
lative authority, and its maintenance being imposed on the
defendants, as a duty, by the act of 1870, no action will lie
for the injury in question.

The immunity of persons acting under legislative author-
ity from liability to actions for injuries resulting to individ-
uals, is founded on the theory that the sovereign will do no
wrong, and that indemnity for any consequential injury a
private citizen may sustain, will be made as an act of grace.
As applied to the acts of the legislature obtained in the inter-
est of individuals or corporations, the hypothesis that the
paternal care of the government will shield the citizen from
injustice, is not confirmed by practice. And no instance is
known in the history of the government, of an appeal to the
legislature, by the private individual, for compensation for
such injuries. Nor is there any reason to suppose such an
appeal, if made, would be attended with success. A rule
resting on a foundation so dubious, the operation of which
may impose upon individuals a loss for which no redress is
attainable, should be confined within the narrowest bounds.

In this state, by an uniform course of decision of long
standing, the limits of the application of this doctrine have
been established with precision, leaving no uncertainty as to
the class of acts which are within its operation.

The injuries to which immunity from responsibility at-
taches, are such only as arise, incidentally, from acts done
under a valid act of the legislature, in the execution of a
public trust for the public benefit, by persons acting with due
skill and caution within the scope of their authority. If the in-
jury be direct, or the work be done for the benefit of an individ-
ual or corporation, with private capital and for private emolu-
ment, the principle which absolves the parties from liability
to action at the suit of persons injured, does not apply, even
though the public be incidentally benefited by the improve-
ment. This subject has been so fully discussed by Mr. Jus-
tice Nevius, in *Sinnickson* v. *Johnson*, 2 *Harr.* 150; and
*Ten Eyck* v. *The Delaware and Raritan Canal Company*, 3
*Ib.* 200; and by Chief Justice Green in *The Delaware
and Raritan Canal Co.* v. *Lee*, 2 *Zab.* 243; *Tinsman* v. *The
Bel. Del. R. R. Co.*, 2 *Dutcher* 148; and *Quinn* v. *City of
Paterson*, 3 *Dutcher* 35, that further discussion and citation of

authorities would be superfluous. The cases cited conclusively settle the law in this state.

The act of 1870 was manifestly passed for the promotion of the private interests of the defendants. Its title is suggestive of the object that was had in view. In the preamble, the increase of the supply of water to create power which could benefit the defendants only, is conspicuously mentioned as one of the ends secured by the improvement. And in the enacting clause, the company is required to maintain the structure for the two-fold purpose of protection to navigation, and the supply of water to their raceway. The improvement of the navigation may be an incidental advantage derived by the public, and may have been an inducement to the legislature to pass the act. But that the main purpose of the act was the promotion of the private interests of the defendants, by increasing their capacity to prosecute their business and removing the restriction put in their charter for the safety of navigation, is too plainly shown by the substance of the act to be mistaken. If public duties exclusively for public benefit had been enjoined, why should the defendants, a corporation with an irrepealable charter, have accepted the act, and voluntarily undertaken the performance of a public trust from which no private emolument would enure?

Nor will the fact that the dam was located and built under the supervision and direction of commissioners named by the legislature relieve the defendants, if it was erected and is maintained for the benefit of the defendants, and for their private emolument. *Hooker* v. *N. H. & N. Co.*, 15 *Conn.* 313. The court will look at the real nature of the act, and scrutinize its provisions closely before they will clothe its promoters with the prerogative of the sovereign of doing wrong, without being compelled to make satisfaction in damages.

These acts of the legislatures which have been referred to, having been passed in pursuance of the power of the legislature of the two states to regulate fisheries and the navigation of the river, under the treaty of 1783, (*Nix. Dig.* 967,) may have the effect to make lawful a structure in the river which

otherwise might be a nuisance in impeding the passage of fish, rafts, arks and boats, contrary to the proviso in the eighth section of the defendants' charter; but they do not bring the defendants within the pale of the rule, which, under some circumstances, exempts persons executing a public trust from liability for resulting injuries. An act which is perfectly lawful in one sense, may, in its consequences, occasion injuries in other respects for which an action will lie. A statute authorizing one to build a dam in a river which is a public highway, will be a justification so far as public interests, such as navigation and fishery, are concerned, and will protect the grantee from indictment or any action for infringing the public right, but will be no justification for a private injury caused by the overflow of the lands of an individual proprietor. *Crittenden* v. *Wilson*, 5 *Cow.* 165; *The Delaware & Raritan Canal Co.* v. *Lee*, 2 *Zab.* 243; *Sinnickson* v. *Johnson*, (per Dayton, J.,) 2 *Harr.* 151; *Tinsman* v. *The B. D. R. R. Co.*, 2 *Dutcher* 148; *Fletcher* v. *Auburn, and Syracuse R. R. Co.*, 25 *Wend.* 462; *Selden* v. *Del. & Hud. C. Co.*, 24 *Barb.* 362; *Eastman* v. *Amoskeag Mfg. Co.*, 44 *New Hamp.* 143; *Hooksett* v. *Amoskeag Mfg. Co.*, *Ib.* 106; *Amoskeag Mfg. Co.* v. *Goodale*, 46 *Ib.* 53.

But if the court had reached a different conclusion as to the nature and purport of these acts of the legislature, another impediment would lie in the way of giving them the effect contended for by the defendants. The creek, on which the plaintiffs' mill is located, is a fresh water stream, which discharges its waters into the river above the ebb and flow of the tide. The soil in the bed of the stream is the private property of the plaintiffs. *Cobb* v. *Davenport*, 3 *Vroom* 369. Incident to their private ownership, as an appurtenant to their lands, is the right to the natural descent of the stream and the unobstructed flow of its waters over their lands, and their discharge upon the lands of the lower proprietor. This right is part of their freehold, and as much property as the title to the soil, which they cannot be deprived of without their consent, except on just compensation made. *Gardner* v. *Village of Newburgh*, 3 *Johns. Ch.* 162. The defence proposed

to be made under these acts, is a justification on the ground that the defendants, by legislative grant, had obtained the power to deprive the plaintiffs of the natural flow of the waters of the creek, and acquired an easement of the right to flow their lands.

The destruction of private property, either total or partial, or the diminution of its value by an act of the government, directly, and not merely incidentally affecting it, which deprives the owner of the ordinary use of it, is a taking within the meaning of the constitutional provision, and the power can only be exercised under the right of eminent domain, subject to the constitutional limitation of making just compensation. *American Print Works* v. *Lawrence*, 1 *Zab.* 248; *Hale* v. *Lawrence, Ib.* 714; *Glover* v. *Powell*, 2 *Stockt.* 211; *Cooley on Const. Lim.* 544. Under this constitutional prohibition, it is not competent for the legislature to deprive an individual of the advantages of a stream of water in its ordinary and natural flow over his lands, or to create an easement in his lands of the right to overflow, without providing compensation for the injury. *Sinnickson* v. *Johnson*, 2 *Harr.* 129; *Ten Eyck* v. *Del. & Rar. Canal Co.*, 3 *Ib.* 201; *Pumpelley* v. *Green Bay Co.*, 13 *Wallace* 166. If compensation has not been made under special provisions contained in the act, which authorizes such interference with private property, the party injured may have redress by action for damages, or by injunction. *Sinnickson* v. *Johnson*, 2 *Harr.* 129; *Carson* v. *Coleman*, 3 *Stockt.* 106; *Gardner* v. *Village of Newburgh*, 2 *Johns. Ch.* 162; *Calking* v. *Baldwin*, 4 *Wend.* 667; *Selden* v. *Del. & Hud. Canal Co.*, 24 *Barb.* 362; *Robinson* v. *N. Y. & E. R. R. Co.*, 27 *Ib.* 512; *Angell on Water Courses*, § 465 *a;* *Ash* v. *Cummings*, 50 *New Hamp.* 591.

The decision of the court excluding these acts from being evidence, was correct. They could not operate to establish the justification on which the defendants rely, nor to exclude the plaintiffs from the right to maintain their action. The judgment should be affirmed.

CITED in *Williamson* v. *N. J. Southern R. R. Co.*, 2 *Stew. Eq.* 311; *Lehigh Valley R. R. Co.* v. *McFarlan*, 4 *Stew. Eq.* 706.