FREDERICK PFEIFER

*v.*

PASSAIC VALLEY SEWERAGE COMMISSIONERS et al.

[Decided October 6th, 1913.]

*P. L. 1907 p. 22 § 5* authorizes the Passaic valley sewerage commissioners, a corporation created to construct a sewer in a sewerage district composed of many municipalities, to construct such sewer under, over, along or across any street, &c., in such way and manner, however, as not necessarily to obstruct or impede travel. In constructing the sewer by a tunnel construction a shaft was constructed from the surface of the ground to the sewer for the removal of the excavated earth and admission of materials, around which was a framework and fence which originally partly obstructed the sidewalk, though the obstruction on the sidewalk was later removed, and which temporarily entirely destroyed an abutting owner's access to the roadway of the street.— *Held,* that the deprivation of his accustomed approach, and the annoyance from the vibration and dust, was not a taking of his property for public use without compensation, since the public domain and public property is subject to the direction and control of the legislature, which may authorize what would otherwise be a nuisance in the street, and any damage caused to an individual by its action is *damnum abseque injuria.*

On motion for preliminary injunction.

The complainant seeks an injunction to prevent the defendants from doing what he insists is a taking of his property for the public use without having first made him compensation there-

for.　The Passaic sewerage commissioners is a corporation of this state created in 1903 for the purpose of constructing an intercepting sewer in that territory which the legislature has designated as the Passaic Valley Sewerage District, and is operating under the following statutes: *P. L. 1902 p. 190; P. L. 1902 p. 195; P. L. 1903 p. 158; P. L. 1903 p. 777,* and *P. L. 1907 p. 22.* That portion of the law of 1903 which provided for taxation was declared to be unconstitutional in the case of *Van Cleve* v. *Commissioners, 71 N. J. Law (42 Vr.) 574;* the defect was supplied by the act of 1907 above cited. The commissioners in the performance of their duties let the contract for the construction of section seven of the sewer which they were required to build, to the defendants Booth & Flinn, in February, 1913, their bid being nearly one and a half million dollars. In the month of March, 1913, they began the work which is now complained of. A portion of the sewer is being constructed many feet under ground by a tunnel construction method longitudinally under Hamburg place, in the city of Newark. The complainant is the owner of a plot of land having a frontage of twenty-five feet on Hamburg place, with an L from the rear giving access to Napoleon street. He claims to own the title to the land in the street in front of his property to the centre line thereof. The sewer, as laid out, and as it is being constructed, is wholly on that side of the centre line of the street on which the complainant's property is situated. To the eastward of the complainant's property, and on the corner of Hamburg place and Napoleon street, is a vacant lot. This is occupied by the commissioners and the contractors for storage and other purposes connected with the work. In front of this vacant lot, within the lines of the roadway of Hamburg place, and close to the curb line on the complainant's side of the street, the contractors have constructed a shaft extending from the surface of the ground to the sewer beneath. This shaft is the means by which the excavated earth is removed and the materials for the sewer construction admitted, and is besides a permanent structure for access to the sewer. In the construction and use of this shaft a frame work has been erected in front of the complainant's property, and a fence built to enclose the top of the shaft. At the time the bill

was filed this fence occupied about four and a half feet of the sidewalk in front of the complainant's property, but since the bill was filed the defendants' affidavits show that the shaft has been completed, and the fence moved to the curb line. This leaves the sidewalk in front of the complainant's property unobstructed, except by the erection of one post to support some portion of the overhead work connected with the hoisting apparatus used in the shaft.

The complainant at the time the sewer work began was engaged in the business of butcher on his premises and had free access from the front portion thereof to the sidewalk and across the sidewalk to the curb and across the sidewalk and the curb to the roadway, and he and his customers were accustomed to use the roadway and the sidewalk in front of the complainant's premises in the transaction of their business. This access has been entirely destroyed temporarily by the construction of the fence and hoisting apparatus in front of the complainant's property and the extension thereof many feet on both sides of his premises. He claims that he is suffering an injury by these circumstances which is peculiar to his situation, and which is much greater than the injury sustained by any of his neighbors, that there should be a differentiation between the injury suffered by him from the construction in front of his property and the injury sustained by other property owners in front of whose property no such obstruction has been erected, and that these circumstances amount to a taking of his property without compensation within the meaning of the constitutional provision.

The law of 1907, above referred to, provides that the commissioners may

"build and construct said intercepting sewer or sewers, and the necessary appurtenances thereto, to the point or points of the discharge and disposition determined by said contract, and for this purpose to pass through or partly through territory situated within the bounds of any other municipality than those contracting with it for the construction of said work, and they shall have full power to construct such intercepting sewer or sewers and its appurtenances along, under and over any water course, or under or over or along or across any street, turnpike, road, railroad, highway or other way or public parks or grounds, and in or upon private or public land under water, in such way and manner, however, as not necessarily to obstruct or impede travel or navigation, and

may enter upon and dig up any street, highway or private or public lands for the purpose of constructing said work and appurtenances, and for repairing and maintaining the same, and in a general way to do all other acts and things necessary, convenient and proper in connection with the making and maintaining of the improvement contemplated by the provisions of this act."

*Mr. Wilbur A. Heisley,* for the motion.

*Mr. J. Henry Harrison* and *Mr. Adrian Riker,* for the defendants.

HOWELL, V. C.

. The complainant assumes that there is a rule of law in this state whereby he may obtain compensation for the injuries and inconveniences suffered by him, upon the ground that his damage is peculiar and exceptional, and is to be differentiated from the damage suffered by other members of the public in front of whose property the sewer in question is being constructed. He admits that the use of the street for the construction of a sewer is a legitimate street use, and he claims no damage on account of the construction of the sewer on his side of the centre line of the highway. Neither does he claim that there has been a physical taking of any of his tangible property within the meaning of the constitutional limitation. What he does say is that he is deprived of the use of his accustomed approach to his premises from the street, and that he is annoyed by vibration and by dust from the works, and that these items of damage exceed those accruing to the other members of the community, and amount to a taking of his property. So far as the acts complained of amount to a trespass, the complainant has his remedy in the common law courts. As to the allegation that the circumstances set out amount to a taking of land without compensation, I find no authority in the cases on the complainant's brief, nor indeed have I been able to find elsewhere any case which supports his contention.

On the other hand, there is abundant authority in our own state for the contrary proposition. I need cite only the case of *Beseman* v. *Pennsylvania Railroad Co., 50 N. J. Law (21 Vr.)*

*235; affirmed, 52 N. J. Law (23 Vr.) 221.* In that case there was an attempt to recover damages against a railway company for. a nuisance claimed to have arisen out of the manner in which it ran its trains in close proximity to the plaintiff's dwelling-house. It was held that so long as the railway company operated its trains in the manner prescribed by its charter, and without negligence, it was not liable for the incidental damages from vibration, noise, smoke and smells which were necessarily caused in the conduct of the railway company's business. What would otherwise amount to a nuisance had been legalized by the authority given to the railway company to construct and operate its railroad. The chief-justice says: "When property has been. incidentally injured, no matter to what extent, as an unavoidable result of a public improvement, such loss has always been deemed remediless, and it has never been supposed that property so injured was 'taken' in the constitutional sense for the public use. All the public improvements in the state have been built and are now resting on this foundation."

If this rule can be lawfully applied to a railway corporation, which is engaged in both public and private business, with how much greater force does it apply to the present case in which the defendants are engaged in a great public work—solely public— involving the public affairs of a drainage district composed of many municipalities and inhabited by hundreds of thousands of people. Again, it is well understood that the public domain and all the property of the public is subject to the direction and control of the legislature, and that whatever damage is caused to the individual by the action of the legislature in regard thereto is *damnum absque injuria.* This body may authorize the erection of what would otherwise be a nuisance in the busiest streets of our public cities, and nobody could claim damages therefor, no matter to what extent he is injured, and such injury cannot amount to a taking of his property. I take it that section 5 of the act of 1907 gives to the commissioners full power and authority to use and occupy the public streets for the purpose for which they appear to have occupied Hamburg place.

The argument of the chief-justice in the *Beseman Case* is supported by the opinion of Lord Cairns in the case of *Hammer-*

*smith Railway Co.* v. *Brand, L. R. 4 H. L. 171; 38 L. J. Q. B. 265.* In that case it was held by the house of lords that the owner of a house and premises adjoining a railway, but not touched by it, which was depreciated in value through vibration, noise and smoke caused by the running of the trains, was not entitled to damages or compensation. The judgment was not unanimous, but Lord Cairns, who dissented, agreed with the majority in relation to the point now being discussed, and stated as follows: "It appears to me that the effect of the legislation on this subject is to take away entirely any right of action on the part of the landowner against the railway company for damage that the landowner has sustained. It must be taken, I think, from the statements in this case that the railway could not be used for the purpose for which it was intended without the consequences of this vibration. It is clear to demonstration that the intention of parliament was that the railway should be used. If, therefore, it could not be used without vibration, and if vibration necessarily caused damage to the adjacent landowner, and if it was intended to preserve to the adjacent landowner his right of action, the consequence would be that action after action would be maintainable against the railway company for the damages which the landowner sustained, and after some actions had been brought and succeeded, the court of chancery would interfere by injunction and would prevent the railway being worked, which, of course, is a *reductio ad absurdum,* and would defeat the intention of the legislature. I have, therefore, no hesitation in arriving at the conclusion that no action would be maintainable against the railway company." See, also, *Canadian Pacific Railway Co.* v. *Roy (1902), A. C. 220; 71 L. J. P. C. 51.*

To the same effect are the Massachusetts cases, which deal with a situation very similar to that in which the defendants here are engaged. In the case of *Lincoln* v. *Commonwealth, 164 Mass. 1, 368,* and *Chelsea Dye House* v. *Commonwealth, 164 Mass. 350,* practically the same questions arose that are now being discussed, and the same result was reached as was reached in the *Beseman Case* and in the *Hammersmith Railway Company Case.*

The very point elaborated by the complainant on the argument arose in the case of the *Northern Transportation Co. of*

*Ohio* v. *Chicago, 99 U. S. 635.* There the city of Chicago, under legislative authority, was engaged in constructing a tunnel to continue La Salle street under the Chicago river. To do this work it was necessary to erect a coffer-dam in the river immediately in front of the plaintiff's property. The case was argued on the assumption that the erection of the coffer-dam and the necessary excavations in the street constituted a public nuisance, causing special damage to the plaintiffs beyond those incident to the public at large, and hence it was inferred that the city was responsible to them for the injurious consequences resulting therefrom. It was held that the assumption was unwarranted and that the act complained of could not be a nuisance so as to give a common law right of action, upon the ground that the work that was being done was authorized by the legislature and was being done in a lawful manner. Mr. Justice Strong says in the opinion: "Here the tunnel, of which the plaintiffs complain, or rather its construction, was authorized by an act of the legislature of the state, and directed by an ordinance of the city councils. * * * The state, and the city councils, as its agents, had full power over the highways of the city, to improve them for the uses for which they were made highways, and the construction of the tunnel was an exercise of that power. Since La Salle street was extended across the river, the city not only had the power but it was its duty to provide for convenience of passage. This it could do either by the erection of a bridge or by the construction of a tunnel under the river and along the line of the street. And the granted power by the legislature to build a bridge or construct a tunnel carried with it, of course, all that was necessary for the exercise of the power. We do not understand this to be controverted by the plaintiffs in error. Their argument is, that though the city had the legal right to construct the tunnel, and to do what was necessary for its construction, subject to the condition that in doing the work there should be no unnecessary interference with private property, yet it was liable to make compensation for the consequential damages caused to persons specially injured. To this we cannot assent."

It cannot escape notice that the argument made in that case is the precise counterpart of the argument made in this case.

That case has had a wide course of citation, and its doctrine has been generally approved throughout the United States. See *Rose's Notes to 99 U. S. 635.*

The cases above referred to arrange themselves into two classes, viz., (1), those dealing with questions of damages during the construction of a public work, of which the *Chicago Case* is an example, and the other (2), questions of damage claimed to arise from the operation of the work after the construction shall have been finished, of which the *Beseman Case* and the *Hammersmith Railway Case* are examples. It appears from the cases cited that there is no difference in principle between the two, and that therefore the claim of the complainant in this case is without foundation.

The result is that the motion for preliminary injunction must be denied.