88 N.J. Super. 378 (1965)
212 A.2d 564
BOARD OF EDUCATION OF THE TOWN OF MORRISTOWN, ETC., PLAINTIFF-APPELLANT,
v.
DWIGHT R.G. PALMER, COMMISSIONER, STATE HIGHWAY DEPARTMENT, ETC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1965.
Decided July 7, 1965.
*379 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Clive S. Cummis argued the cause for appellant.
*380 Mr. William J. McCormack, Deputy Attorney General, argued the cause for respondent State Highway Commissioner (Mr. Arthur J. Sills, Attorney General, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This dispute involves the construction of part of Interstate Highway Route 287 (I-287) and an interchange or ramp system connecting with it, in the vicinity of the George Washington Elementary School, Morristown, N.J. The real parties in interest are plaintiff Board of Education of Morristown, owner of the school, and defendant Dwight R.G. Palmer, Commissioner of the New Jersey Highway Department, which department is presently engaged in the construction of the highway.
Plaintiff instituted a Chancery Division action upon verified complaint and order to show cause, supported by seven affidavits, in which it demanded, essentially, that the Commissioner be compelled to condemn the school property and, pending such condemnation, that he (i.e., the Highway Department) be stayed from taking any action in furtherance of the construction project which would substantially affect plaintiff's use of the George Washington school as an elementary educational facility. On the return day of the order to show cause the Department submitted two affidavits in opposition, originally stating that no part of plaintiff's land would be taken, but then amended to say that a small piece would be taken. The matter was disposed of in summary fashion, apparently in the light of defense counsel's oral representation that there would, in fact, be no physical taking.
In his oral opinion at the close of argument the trial judge said he was compelled to the conclusion that the complaint must be dismissed because  assuming all of plaintiff's contentions to be true  there was no New Jersey precedent for holding that there could be a "taking," constitutionally compensable, absent a physical invasion of the school property itself or severance of access thereto. If the Commissioner took any part of the school premises, there would, of course, have *381 to be condemnation proceedings to determine the value of the part taken and any damage to the remainder.
Plaintiff filed a notice of appeal immediately following entry of final judgment dismissing its complaint. It simultaneously applied to a single judge of this Part for an order staying any action in furtherance of the construction until the full Part could hear plaintiff's motion for a stay pending appeal. Defense counsel agreed to hold the matter in statu quo until the motion was determined. The Highway Department then submitted two additional affidavits stating that it was absolutely urgent that work be commenced as quickly as possible, pursuant to a predetermined schedule for the completion of the project; that access to the school after construction would be exactly the same, i.e., at grade level from Morris Street which fronts the school, and that the Department did not intend to take any physical part of plaintiff's land. We denied a stay pending appeal. Plaintiff then applied to the Supreme Court, which also denied a stay.
George Washington Elementary School is one of Morristown's three elementary schools. It has 480 students, ranging from kindergarten children of average age 5 to sixth grade children of average age 11. The school property covers about 5.3 acres, which is approximately one-half of the land area required for an elementary educational facility with a comparable school population  a standard fixed by the New Jersey State Department of Education in its "Guide for Schoolhouse Planning and Construction" (Dec. 1964 rev.).
Route I-287 will be a depressed six-lane superhighway and will pass within 40 feet of the school's east wing, which is specially designed for and used by kindergarten pupils. It will underpass Morris Street, which is to become one-way eastbound. The three southbound lanes of I-287 will be fed by a ramp leading from Morris Street and curving around the school, circling its west wing, rear of the playground and east wing. A new alignment is planned for westbound traffic on Morris Street, with a ramp from this thoroughfare shortly *382 after it passes underneath I-287, and joining the ramp from Morris Street eastbound on the east side of the school.
The complaint charges that the alignment of I-287 and its ramps and interchanges will render the George Washington Elementary School "useless as an elementary school facility." Plaintiff alleges that the proposed construction will result in (1) extreme danger to pupils between their homes and the school, whether on foot or on bicycles; (2) noxious fumes and serious problems of air pollution; (3) extreme noise from surrounding traffic, which will so interfere with the teaching process and oral control of pupils within the school building as to nullify any effective educational program; (4) a serious safety problem to pupils using the outdoor play area, the edge of which will be close to an embankment leading down to the highway level; and (5) traffic noises that will hinder and render ineffective the school's outdoor physical education program because the instructors' verbal instructions will be limited to 3-5 feet when trucks are using the highway. Plaintiff claims that because of the cumulative effect of these limitations, hazards and interferences, the beneficial use of the school lands and building will be destroyed, and this, in effect, amounts to a taking of the property itself.
The complaint was supported by affidavits of plaintiff board's president and former president, the school principal, the Morristown superintendent of schools, the physical education instructor for elementary schools in Morristown, a professional engineer and expert in acoustics, and an architect specializing in school planning and building. All were familiar with the school site and with the Department's construction proposal. Their affidavits, in combination with the exhibits, disclose that the construction will result in creating an island of the school site. The contents of these affidavits need not be detailed; it suffices to say that they fully support the allegations of the complaint. In addition, the affidavits of the board president and past president cite the opinion of the Deputy Commissioner of the State Department of Education, one of the consultants to the committee which prepared the *383 "Guide for Schoolhouse Planning and Construction," who advised the board that the proposed construction would eventually necessitate abandonment of the school.
Before discussing plaintiff's central contention that the proposed highway construction amounts to a taking in the constitutional sense, we proceed to dispose of a number of ancillary matters.
Plaintiff does not dispute the principle that the court will not interfere with the State Highway Department's construction of a highway, absent affirmative proof of bad faith, fraud, corruption, manifest oppression or palpable abuse of discretion. City of Newark v. N.J. Turnpike Authority, 7 N.J. 377, 381-382 (1951); City of Trenton v. Lenzner, 16 N.J. 465, 473 (1954). The Department, in turn, does not dispute plaintiff's claim that where there has been an appropriation of property by a governmental entity having the power of eminent domain, without its having undertaken to provide for condemnation, the primary remedy of the property owner lies in an action in the nature of mandamus to compel the institution of condemnation proceedings. Haycock v. Jannarone, 99 N.J.L. 183, 185 (E. & A. 1923), recently cited in City of East Orange v. Palmer, 82 N.J. Super. 258, 266 (Ch. Div. 1964).
Plaintiff claims that if we are satisfied that it is entitled to a hearing on the question of damages in condemnation, it is obligatory upon defendant Commissioner to follow the procedure fixed in N.J.S.A. 27:7-23, which reads:
"If the commissioner finds it necessary to acquire lands owned and used by municipalities for public uses and purposes he shall, before taking it over for highway purposes and after hearing had in the manner prescribed in section 27:7-4 of this Title, if before the time fixed for the hearing the municipality whose land is subject to be acquired shall file a notice with the commissioner setting forth that the land is necessary for the public use of the municipality, determine whether or not it is a reasonable public necessity to acquire the land in question.
If the commissioner decides that it is a reasonable public necessity to acquire such lands for the State highway system, he shall give notice of his finding by serving a copy thereof upon the clerk of the *384 governing body of the municipality within ten days after rendering the decision.
The municipality may within twenty days after service upon it of such notice, appeal from the decision of the commissioner to the Superior Court, which shall in an action hear and determine the question of whether or not the taking of the land in question in preference to some other route is a reasonable public necessity. The court may proceed in the action in a summary manner or otherwise."
The reason for plaintiff's resort to this enactment is obvious: the statute would give it the right to seek a court review of the Commissioner's determination that the land intended to be taken for I-287, in preference to some other route, was a reasonable public necessity.
The inappropriateness of plaintiff's reliance is equally obvious. N.J.S.A. 27:7-23 on its face deals only with a situation where land "owned and used by municipalities for public uses and purposes" is to be taken for highway purposes. The George Washington Elementary School does not meet this description. It belongs to plaintiff, an independent agency of local government. It may be observed that the Legislature has defined "municipality" as including "cities, towns, townships, villages and boroughs, and any municipality governed by a board of commissioners or an improvement commission." N.J.S.A. 1:1-2. School boards are not mentioned.
The only public hearing that was called for in connection with I-287 was that provided by 23 U.S.C.A., § 128, which requires that any state highway department submitting plans for an Interstate System project shall certify that "it has had public hearings at a convenient location, or has afforded the opportunity for such hearings"; and when such hearings have been held the department is to submit a copy of the transcript of the hearings, together with the certification. The State Highway Department held such a public hearing in June 1960 at the Fairleigh Dickinson College in Madison, N.J., at which Morristown was represented by counsel who called upon at least 15 persons to protest against the plan for I-287. This was basically the same plan the Department now proposes *385 to follow. (We note, in passing, there have been many conferences between and among representatives of the Department, the Town of Morristown and plaintiff over a period of almost five years, without any significant change in alignment.)
We therefore conclude that plaintiff has no claim to the procedure mandated by N.J.S.A. 27:7-23.
We do not deal here with a proposed physical taking of any part of the school property. As the matter now stands, the Department disavows all intention of taking any portion of plaintiff's land. Nor are we concerned with a situation where access to the school is being cut off, as in Mueller v. New Jersey Highway Authority, 59 N.J. Super. 583 (App. Div. 1960). Morris Street, which has always been the main approach to the school, will remain at its present grade level. It will, however, be one-way only  eastbound. Pupils on bicycles and parents who drive their children to school from the western direction will have to find some other route than present Morris Street.
Plaintiff's main argument on this appeal is that a direct physical invasion of property is not a prerequisite to the finding of a "taking" within the meaning of the State and Federal Constitutions. The encircling of the school by the depressed superhighway and its ramp interchanges will, it claims, result in the destruction of the beneficial use of the school property for educational purposes, and this of itself constitutes a "taking."
It is familiar law that there are two types of constitutional provisions for the payment of compensation: "taking" and "taking or damage." New Jersey is a "taking" state. Art. I, par. 20 of our 1947 Constitution provides that "Private property shall not be taken for public use without just compensation. * * *" Similarly with regard to the United States Constitution  the Fifth Amendment provides compensation only where private property is "taken" for public use. Any taking of property for public purposes without just compensation being paid the owner constitutes a deprivation of property *386 without due process of law. State by State Highway Com'r v. Burnett, 24 N.J. 280, 287 (1957).
The United States Supreme Court defined "property" and "taking" in United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945). "Property," it said, denotes "the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it." As for "taking,"
"* * * The courts have held that the deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking. Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking.
But it is to be observed that whether the sovereign substitutes itself as occupant in place of the former owner, or destroys all his existing rights in the subject matter, the Fifth Amendment concerns itself solely with `property,' i.e., with the owner's relation as such to the physical thing and not with other collateral interests which may be incidental to its ownership." (323 U.S., at page 378, 65 S.Ct., at page 359)
And see 2 Nichols, Eminent Domain (3d ed. 1963), § 6.3, p. 407.
Counsel for the State Highway Commissioner argues that when a highway is constructed on land adjacent to that of an individual owner, but none of his land is actually taken, he has no constitutional right to compensation although he may suffer from noise, fumes, dust and other incidental inconveniences. We are familiar with the line of cases that so hold and which (among others) are advanced by defendant in support of his position. Commonly cited is Beseman v. Pennsylvania R.R. Co., 50 N.J.L. 235 (Sup. Ct. 1888), affirmed o.b. 52 N.J.L. 221 (E. & A. 1889), where Chief Justice Beasley, in his usual vigorous style, stated that "When property has been incidentally injured, no matter to what extent, as an unavoidable result of a public improvement, such loss has always been deemed remediless, and it has never been supposed that the property so injured was taken, in the constitutional sense, for *387 the public use." (at page 245) In that case the railroad, in the exercise of its legislatively chartered powers, had built an elevated track running along the rear of plaintiff's lots and within ten feet of houses built thereon. It had used the track for trains carrying cattle, sheep, swine, manure and other freight. Plaintiff alleged that the noise, smoke, odors and vibrations made the houses unfit for habitation. The Chief Justice said that what the railroad was doing was in discharge of its public purpose, and the inconvenience and annoyances suffered by plaintiff were incidental to the proper exercise of its functions. They were damnum absque injuria "because the cause producing [them] is legalized, in promotion of the general welfare." To the same effect are Pfeifer v. Passaic Valley Sewerage Comm'rs, 82 N.J. Eq. 169 (Ch. 1913) (construction of sewer in street fronting plaintiff's home  temporary interference with access to street, vibration and dust); Klement v. Delaware River Joint Toll Bridge Comm'n, 119 N.J.L. 600 (Sup. Ct. 1938), affirmed sub. nom. Colburn v. Delaware River Joint Toll Bridge Comm'n, 123 N.J.L. 197 (E. & A. 1939), in turn reversed by the United States Supreme Court in Delaware River Joint Toll Bridge Comm'n v. Colburn, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940) (20'-30' high bridge embankment constructed in the immediate vicinity of plaintiffs' residences, cutting off view of river and opposite shore, and closing certain streets). Defendant also cites Batten v. United States, 306 F.2d 580 (10 Cir. 1962), certiorari denied 371 U.S. 955, 956, 83 S.Ct. 506, 93 L.Ed.2d 502 (1963) (noise, vibration and smoke incidental to operation of jet planes at nearby airport). But see the strong dissent of Chief Judge Murrah, 306 F.2d, at pages 586-587.
These cases, and others to which we are referred by defendant's brief, stand simply for the proposition that courts in a "taking" state will deny compensation for incidental inconveniences or annoyances affecting not only the complaining party but others in the general area. Such is not the case projected by the Morristown Board of Education. It does not *388 complain of incidental inconvenience and annoyance; rather, its complaint makes the flat claim that the encircling superhighway and ramps will destroy the beneficial use of the George Washington Elementary School for educational purposes. If this can be proved, then the situation is far removed from those considered in the cases upon which defendant relies.
Trenton Water Power Co. v. Raff, 36 N.J.L. 335 (Sup. Ct. 1873), was an action to recover for damage to the Raff mill by creek waters which were backed up by a dam built under authority of the Legislature. The court held that plaintiffs were entitled to damages although the dam itself was not located on their property. Justice Depue said (at page 343) that the destruction of private property, either total or partial, directly and not merely incidentally affecting it, and which deprived the owners of its ordinary use, is a taking within the meaning of the constitutional provision, and such power can be exercised only under the right of eminent domain.
In Pennsylvania R.R. Co. v. Angel, 41 N.J. Eq. 316 (E. & A. 1886), the railroad tracks ran in the vicinity of complainants' homes; the complaint was that the noise of the trains, the bellowing of cattle and bleating of sheep, the smell of pigs, and the smoke, dust and cinders produced by the engines, constituted a nuisance. It appears that the railroad used a siding next to the homes, where freight trains frequently stopped and cars were distributed. This was held to be a violation of the railroad charter and enjoined. No injunction issued against the ordinary rail operations. Although the following quotation was dictum insofar as the illegal operation was concerned, it merits consideration in the circumstances of the present case. The court said:
"* * * Whether you flood the farmer's fields so that they cannot be cultivated, or pollute the bleacher's stream so that his fabrics are stained, or fill one's dwelling with smells and noise so that it cannot be occupied in comfort, you equally take away the owner's property. In neither instance has the owner any less of material things than he had before, but in each case the utility of his property has been impaired by a direct invasion of the bounds of his private dominion. *389 This is the taking of his property in a constitutional sense; of course, mere statutory authority will not avail for such an interference with private property." (at page 329, citing the Raff case)
The United States Supreme Court has on several occasions held that private property is taken within the meaning of the Fifth Amendment when its beneficial use is destroyed or substantially diminished, although the owner thereof remains in undisputed possession of the entire tract. See, for example, United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (overflight of bombers at heights below those specified by statute; noise, lights, dirt and vibrations resulted in termination of chicken business, uninhabitability of homes); Portsmouth Harbor L & H Co. v. United States, 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287 (1922) (artillery fire over the property); United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1916) (construction of locks and dams raised river level and deprived mill of water power).
The court in Causby stated that the invasion of the air space over the property involved, by military planes taking off and landing at a nearby base, was "in the same category as invasions of the surface." It amounted to an "easement of flight" equivalent to an interest in the fee. The fact that the planes never touched the surface was irrelevant; the owner's right to possess and use the land  his beneficial ownership  was destroyed. The situation was not one of incidental damages arising from a legalized nuisance. 328 U.S., at page 262, 66 S.Ct. 1062. And see Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962). (In Portsmouth, the court spoke of the firing as imposing a servitude.)
Defendant attempts to distinguish Causby because the result was based upon a theory of trespass; there was, in effect, a physical invasion of plaintiff's property. Cf. Batten v. United States, above. We find the distinction rather tenuous. Whether there has been a technical trespass or not, the effect upon the property owner is the same, and he should be compensated. The distinction was expressly rejected in the well-reasoned *390 decision in Thornburg v. Port of Portland, 233 Or. 178, 376 P.2d 100 (Sup. Ct. 1962). Oregon is a "taking" state. A majority of the court ruled that property owners were entitled to compensation for jet aircraft flights passing about 1,000 feet to one side of their property, resulting in noise and tremors. It held there was a taking in the constitutional sense, and this without the element of trespass of air space or any physical contact whatever. It said:
"It is sterile formality to say that the government takes an easement in private property when it repeatedly sends aircraft directly over the land at altitudes so low as to render the land unusable by its owner, but does not take an easement when it sends aircraft a few feet to the right or left of the perpendicular boundaries (thereby rendering the same land equally unusable). * * *" (376 P.2d, at page 109)
See Dunham, "Griggs v. Allegheny County in Perspective: Thirty Years of Supreme Court Expropriation Law," Sup. Ct. Rev. 63, 87 (1962); Sax, "Takings and the Police Power," 74 Yale L.J. 36, 67-68 (1964).
The damage to plaintiff's school property, to the point of total or substantial destruction of its beneficial use as a school facility would (assuming plaintiff can prove the allegations made in the complaint and supporting affidavits) be different in kind from the damage suffered by other property owners in the area. Cf. Richards v. Washington Terminal Co., 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088 (1914). If plaintiff is correct in its assertions, it will be faced with the dilemma of remaining where it is and carrying on as best it can, at the risk of children's lives and the certainty of substandard education, or moving the entire school operation to another location. If the beneficial use has indeed been destroyed, there will be no other choice but to move, at an alleged cost of some 2-2 1/2 million dollars. In such a case justice demands that the right to compensation as well as the amount thereof be determined by the effect of the proposed highway construction upon the school facilities, without regard *391 to whether such construction involves a physical invasion of the property.
We therefore hold that it was error for the trial court to have disposed of the matter in a summary manner. It proceeded as though defendant had moved for summary judgment. In such a case it would be defendant's burden to exclude all reasonable doubt as to the existence of any genuine issue of material fact, all inferences being drawn against it in favor of plaintiff. Its papers would be closely scrutinized, and plaintiff's indulgently treated. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954). The seven affidavits offered by plaintiff in support of its complaint were unusually comprehensive and, as we have said, fully supported the allegations of the complaint. Defendant's affidavits did not meet their thrust. The matter should have been thoroughly explored at a full hearing to determine whether the beneficial use of the George Washington Elementary School was either totally or substantially destroyed, as alleged, by the highway project, so as to amount to a taking.
We see no occasion for enjoining defendant from taking any action in furtherance of the construction of I-287 in the vicinity of the school. We fully considered the matter, as did the Supreme Court, when plaintiff applied for a stay pending determination of the appeal. If plaintiff establishes its claim as to the destruction of the beneficial use of the school, in whole or in substantial part, it will be compensated by way of damages in condemnation.
The Chancery Division judgment is accordingly reversed and the matter remanded for a full hearing. No costs.