264 N.J. Super. 285 (1993)
624 A.2d 618
MARVIN KLEIN, PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, ITS AGENTS, SERVANTS AND REPRESENTATIVES, INDIVIDUALLY, JOINTLY AND SEVERALLY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1993.
Decided May 7, 1993.
*287 Before Judges PRESSLER, MUIR, Jr., and KESTIN.
Dennis J. Drasco argued the cause for appellant (Lum, Hoens, Conant, Danzis & Kleinberg, attorneys; Mr. Drasco, of counsel and on the brief; Steven F. Ritardi, on the brief).
Alice S. Thiele, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, *288 attorney; Mary C. Jacobson, Senior Deputy Attorney General, of counsel; Ms. Thiele, on the brief).
The opinion of the court was delivered by MUIR, Jr., J.A.D.
This appeal is from a summary judgment dismissing plaintiff's inverse condemnation complaint. The appeal centers on plaintiff's claim of a right of access to a railroad line known as the Harbor Industrial Track (Harbor Track) and whether plaintiff demonstrates a constitutional taking occurred. We affirm.
The record facts are essentially undisputed. Plaintiff, either through a corporation or individually, has owned, since 1971, a warehouse that adjoins Route 169 in Bayonne. In 1971, through the corporation, plaintiff constructed the warehouse. As part of the construction, the corporation installed railroad siding tracks next to the warehouse. Those tracks converged and connected with a Lehigh Valley Railroad (Lehigh) spur that crossed Route 169 to the Harbor Track.
On July 29, 1971, plaintiff, doing business as Nevins Distribution Center, signed a "Sidetrack Agreement" with Lehigh. The agreement covered the use, ownership, and maintenance of three sections of track. From a review of the record, it is evident the three sections described are two converging siding tracks and the track that connected them with the Lehigh spur. A rider to the agreement called for ownership of the connecting track to pass to Lehigh upon termination of the agreement by Lehigh "for any reason."
Lehigh terminated the agreement March 4, 1976. Under the Regional Rail Reorganization Act of 1973 (45 U.S.C.A. § 701, et seq.), Conrail replaced Lehigh as the operator and owner of the Harbor Track. The Conrail takeover effected Lehigh's termination of the private siding agreement for servicing plaintiff's warehouse.
After Conrail took over, it provided no service to the warehouse and plaintiff sought none. The only record reference to the post-Conrail *289 takeover period is an inter-departmental memorandum from defendant's file. The memorandum refers to Conrail's 1982 ICC approved abandonment of the Harbor Track and Conrail's 1984 transfer of ownership to the State of the area for servicing plaintiff's warehouse.
On October 10, 1985, defendant, as part of its project to widen Route 169, offered plaintiff $4,500 for plaintiff's right to operate and utilize the existing rail spur "together with all right title and interest" plaintiff "may have" in Route 169 or the adjoining roadway. The underlying appraisal stated "this denial of access precludes the owner from use of the unused, stone covered unfunctional R.R. Siding, the future use of which the Appraiser feels was highly speculative...." When plaintiff demanded $2,000,000, negotiations terminated. In August 1987 defendant concluded, based on the noted inter-departmental memorandum, that plaintiff had no compensable interest. Defendant thereafter abandoned its efforts to acquire the "right of access."
Earlier in 1987, Conrail sent to plaintiff's tenant, H & M, ba $2,000 "bill" for "1986 Industrial Switch Connection Maintenance." At a time when the plaintiff's siding tracks were covered with crushed stone and Conrail had abandoned the Harbor Track and its ability to service plaintiff's warehouse, the bill offered H & M the option, by checking the appropriate block to indicate its choice, of paying $2,000 or authorizing removal of the "switch connection at our plant." While no explanation is given for Conrail's action, plaintiff does not assert he or H & M took any action. Plaintiff, nonetheless, claims the switch maintenance proposal establishes his right of access to the Harbor Track.
On May 17, 1991, plaintiff instituted this action by way of order to show cause and verified complaint. At the time, plaintiff rented the warehouse as a truck-shipping center. The State, apparently prior to institution of suit and to accommodate the warehouse tenant, had provided a curb cut for access to the newly widened Route 169.
*290 The summary judgment arose in a unique manner. Troubled by the Conrail switch maintenance proposal, defense counsel tried to clarify with Conrail whether it had "terminated service" to plaintiff's sidetrack. After its efforts proved fruitless, defendant moved to dismiss for failure to state a claim. In support, defendant relied on Washington Mkt. Enter., Inc. v. Trenton, 68 N.J. 107, 343 A.2d 408 (1975). Plaintiff filed a cross-motion for summary judgment seeking appointment of commissioners. In support, plaintiff relied on Mueller v. New Jersey Highway Auth., 59 N.J. Super. 583, 158 A.2d 343 (App.Div. 1960). The trial court converted defendant's motion to one for summary judgment and granted it. In granting judgment, the court held no "constitutional taking" occurred. It reasoned, in effect, in absence of a physical invasion and in absence of an express easement, loss of the highest and best use of the property did not present a compensable taking.
Plaintiff's appeal raises several issues. For the first time he argues the trial court improperly considered the taking issue because the $4,500 offer equitably estopped defendant from raising that issue and limited the trial court proceeding to one of the amount of diminution in value of plaintiff's land caused by the taking. Alternatively, plaintiff relies on Mueller v. New Jersey Highway Auth., supra, to establish his compensable loss of access to Conrail's rail line. Finally, he asserts error in the trial court's conversion of defendant's motion to one of summary judgment and claims a number of genuine issues of material fact precluded grant of summary judgment.
We deal first with the equitable estoppel argument. Equitable estoppel requires a knowing misrepresentation of material fact by one party and an unawareness of the true facts by the party seeking the estoppel who changed his position for the worse in reliance on the representation. See O'Malley v. Department of Energy, 109 N.J. 309, 317, 537 A.2d 647 (1987).
Plaintiff's estoppel claim is untenable. There is no proof of a knowing misrepresentation. The appraisal and offer did not *291 constitute assertions of facts so as to amount to a legally binding admission. More significantly, however, there is nothing to suggest plaintiff relied upon the offer to his detriment. Those circumstances, considered with the principle that equitable estoppel is rarely invoked against a state agency, satisfy us the offer does not bar defendant from challenging plaintiff's compensable taking claim. Id. at 316, 537 A.2d 647.
We turn now to that claim. We first register our disagreement with plaintiff's argument that Mueller is dispositive of his claim that there is a compensable taking. Mueller dealt with a landowner's loss of a compensable interest when, in absence of a physical invasion of his property, the owner lost access to an abutting public highway. We ruled:
A pre-existing easement of access to and from a public highway, possessed by an owner of land abutting on such highway, constitutes a right of property of which he cannot be deprived without just compensation, and it is of no consequence that he does not own in fee the roadway subject to the easement.
[Mueller v. New Jersey Highway Auth., supra, 59 N.J. Super. at 589, 158 A.2d 343]
See High Horizons Dev. Co. v. Department of Transp., 120 N.J. 40, 49, 575 A.2d 1360 (1990) (Highway Access Management Act, N.J.S.A. 27:7-90e, f, g, confirms Mueller's access principle). The ruling is premised not on a physical invasion but on an implied easement of access when the subject property abuts a public highway. See Payne, A Survey of New Jersey Eminent Domain Law, 30 Rutgers L.Rev. 111, 1187-88 (1977).
There is no comparability between an abutting owner's access to a public highway and an adjoining owner's access to a railroad. In the former instance, the judicially created easement of access, now recognized by statute, is premised on recognition of the traditional purpose of a public highway, accommodation of vehicles traditionally owned by the public for transportation. In the latter instance, it is obvious no such traditional purpose exists. Ingress and egress to a public highway is significantly distinguishable from ingress and egress to a railroad track. Propinquity to a railroad track does not suggest a need for a right of access as it does in the case of a public highway. Additionally, the vehicles of *292 transport, and rails designed for their use, are traditionally owned by the company running the railroads, and we cannot create an implied entitlement to use those vehicles and facilities. Simply put, a railroad line may be regulated in the public interest but it is not a public highway.
Our position is supported by N.J.S.A. 48:12-32. That statute, in pertinent part, provides that "[a]ny railroad company ... may maintain and operate [any branch line or lines of railroad not exceeding two miles in length] extending from the main line or any branch line of the company to any ... warehouse whenever it shall be in the interest of the company." (emphasis added) The statute allows an owner of a warehouse access to adjoining railroad lines only to the extent the railroad company deems it appropriate. The control of access then is in the hands of the company, and no judicially implied right of access can be created. We cannot by judicial fiat create for an adjoining property owner a right of access to, or use of, a railroad. Mueller is inapposite here.
The statute has further bearing on plaintiff's compensable taking claim. For his claim to survive, plaintiff has to demonstrate he had a right of access to the Harbor Track formerly owned and operated by Lehigh. Since a private party can gain access to railroad lines only if the operating company judges that access in its interest, plaintiff has the burden of proving the company made such a judgment. In light of Lehigh's termination of its agreement, viability of plaintiff's claim can exist only if it can be said Conrail's switch maintenance proposal establishes a making of that judgment.
Any assessment as to whether such a judgment was made has to be reviewed in light of the facts plaintiff alleges to support it. While we recognize in the context of summary judgment plaintiff is entitled to all the favorable inferences from the evidence of record, a summary judgment can only be prevented if those inferences project a genuine issue of material fact. Here, we are satisfied plaintiff has not projected the required genuine issues. *293 In his brief plaintiff points to a number of "genuine fact" issues which, on review, are unpersuasive when juxtaposed with the undisputed facts in the record. Initially he contends the $4,500 offer and the underlying appraisal create the required genuine issue. But as noted, the making of the offer cannot create the right of access to the Conrail owned and controlled spur and Harbor Track. Moreover, the appraisal notes the warehouse siding tracks were covered with crushed stone, making the siding unfunctional. Then defendant argues by conclusion that other genuine issues exist. However, two of those issues relate solely to damages. The final one is "appellant's right to rail access which serviced the subject property." At this time, due to our concern for the trial court's transformation of defendant's motion to one of summary judgment, we would have been willing to accept brief-identified facts to provide the arguable right of access claim, but plaintiff presents no such facts.
The posturing of genuine fact issues then has to be viewed against the undisputed facts in the record: Conrail had abandoned the Harbor Track, the line that plaintiff claims a right of access to, five years before the Conrail switch maintenance proposal and three years before Conrail conveyed to the State the area through which it could service plaintiff's warehouse. The clear and indisputable conclusion from that evidence is that Conrail could not provide railroad service to plaintiff's warehouse, and thus the switch maintenance proposal was an administrative error and nothing more. Consequently, plaintiff fails to present any substantive facts to sustain his claim of a lost right of access.
That, however, is not the only basis for our affirmance. Even if we were to assume the Conrail switch maintenance proposal demonstrated arguable evidence of the right of access, plaintiff's inverse condemnation claim of impaired value of his warehouse fails for lack of proof of a taking in the constitutional sense.
Not every arguable impairment of value establishes a taking. See Washington Mkt. Enter., Inc. v. Trenton, supra, 68 *294 N.J. at 116, 343 A.2d 408. This is particularly so where, as here, there is no physical invasion. When no physical invasion occurs, our classification as a state that requires compensation only where taking occurs and not where taking or damage occurs becomes significant. As we have ruled on a prior occasion, that distinction precludes compensation where the alleged taking relates only to incidental inconveniences or annoyances. Board of Educ. of Morristown v. Palmer, 88 N.J. Super. 378, 387, 212 A.2d 564 (App.Div. 1965), rev'd as premature, 46 N.J. 522, 218 A.2d 153 (1966), but sustained as to its "doctrinal basis" in Washington Mkt. Enter., Inc. v. Trenton, supra, 68 N.J. at 122-23, 343 A.2d 408. Furthermore, the distinction reposes on an inverse condemnation claimant the burden of demonstrating "total or substantial destruction of [the] beneficial use" of his property. See Board of Educ. of Morristown v. Palmer, supra, 88 N.J. Super. at 390, 212 A.2d 564.
This is the same burden required of an owner in inverse condemnation actions where the claim is that a governmental regulation detrimentally altered the economic value of property. See Washington Mkt. Enter., Inc. v. Trenton, supra, 68 N.J. at 123, 343 A.2d 408 (requiring claimant to show that "there has been a substantial destruction of the value of [his] property and that defendant's activities have been a substantial factor in bringing [the destruction] about"). See also Littman v. Gimello, 115 N.J. 154, 166, 167, 557 A.2d 314, cert. denied, 493 U.S. 934, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989). In Washington Mkt. Enter., Inc., the late Justice Mountain, writing for the Court, stated that Board of Educ. of Morristown v. Palmer "laid down a doctrinal basis ... which is indistinguishable from what we do today." Washington Mkt. Enter., Inc. v. Trenton, supra, 68 N.J. at 123, 343 A.2d 408. Since the Palmer case dealt with a non-regulatory, non-physical invasion taking claim, we are satisfied that in the case before us the owner's burden of proof is to show a substantial destruction in value to the beneficial use of his property before a taking in a constitutional sense occurs.
*295 Even in the context of summary judgment with favorable inferences drawn on his behalf, plaintiff has not satisfied that burden of proof. Beset with evidence that his siding tracks are covered with crushed stone, making them unfunctional, and that he did not pursue Conrail's switch maintenance proposal, indicating no current intent to use the railroad service, his only claim is that at some time in the future, if a new tenant wishes rail service and he is unable to supply it, his warehouse will suffer a diminution in value that is presently compensable. Such a claim, as a matter of law, fails to demonstrate the substantial destruction in property value required to sustain his inverse condemnation claim.
Affirmed.