633 A.2d 1045

JOHN MORONEY AND MARY MORONEY, HIS WIFE, PLAIN-
TIFFS-RESPONDENTS, v. MAYOR AND COUNCIL OF THE
BOROUGH OF OLD TAPPAN; THE BOARD OF ADJUSTMENT
OF THE BOROUGH OF OLD TAPPAN AND THE CONSTRUC-
TION CODE OFFICIAL OF THE BOROUGH OF OLD TAPPAN,
DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued September 13, 1993—Decided December 8, 1993.

Before Judges COLEMAN, MUIR, Jr.[1] and LEVY.

*Gregory C. Hart* argued the cause for appellant Mayor and Council of the Borough of Old Tappan (*Gladstone, Milazzo & Hart,* attorneys; *Mr. Hart,* on the brief).

*Russell R. Huntington* argued the cause for respondents.

The opinion of the court was delivered by

COLEMAN, P.J.A.D.

This case requires us to decide whether there has been an administrative taking of plaintiffs' land through zoning regulations requiring the payment of just compensation.

---

[1] Judge Muir did not participate in oral argument, but counsel have consented to him participating in the decision.

Plaintiffs are the owners of an undersized, isolated lot located in the Borough of Old Tappan (Borough) which does not meet the requirements of the local zoning ordinance for construction of a single family house. Plaintiffs were denied a hardship variance to construct a single family house on the lot because they failed to satisfy the negative criteria of *N.J.S.A.* 40:55D–70. They then filed a complaint in lieu of prerogative writs seeking to reverse the denial of the variance application, (Count Two), or, in the alternative, to compel the Borough to commence condemnation proceedings, (Count One). On January 22, 1992, an order was entered affirming the denial of the hardship variance. The judge found that "although the plaintiffs have satisfied the positive criteria, the negative criteria cannot be met in this case."

On August 24, 1992, the same judge in the Law Division entered judgment in favor of plaintiffs for inverse condemnation. He found that on January 22, 1992, the date he affirmed the denial of the hardship variance, inverse condemnation occurred. The judge appointed three Commissioners to determine the fair market value of the lot in accordance with *N.J.S.A.* 20:1–1 *et seq.* That judgment was deemed final for purposes of appeal. Defendants have appealed only the inverse condemnation aspect of the judgment. We affirm.

## I

The property involved in this appeal is designated on the Borough's tax map as Lot 2, Block 1604 (Lot 2), located on the corner of Russell Avenue and Old Tappan Road and is contiguous to the Ambulance Corps. Across the street is the Borough's Fire Department and the new Municipal Complex. Lot 2 is located in an RA–15 Residential One Family Zone of the Borough. The ordinance was adopted in 1947 and has been substantially unchanged since its adoption. This property has been a separate lot, not under common ownership with any contiguous lot, since prior to the 1947 ordinance.

The chain of title discloses that Louis M. and Margaret Budinick acquired title to the lot in 1953 upon foreclosure of a Tax Sale Certificate. Plaintiffs acquired title to Lot 2 and another non-contiguous lot with improvements by Deed from the Budinicks, dated April 13, 1984, and recorded April 23, 1984. The consideration for the single Deed for the two properties was $100,000. There was no allocation of the consideration between the two properties either in the Deed or the Contract of Sale. Plaintiffs made additional improvements to the home located on the larger lot and sold it by Deed dated August 24, 1984, for $110,000.

In June 1984, plaintiffs filed an application with defendant Board of Adjustment (Board) seeking hardship variances to construct a single family dwelling on Lot 2. The controlling ordinance requires a buildable corner lot to be at least 100 feet wide, building setback of 35 feet and 15,000 square feet in bulk. The Plot Plan for the proposed house shows the lot as 50 feet wide, 10 feet setback for the building and 5,220 square feet in bulk. The proposed house would cover thirty-six percent of the lot rather than the twenty-five percent maximum coverage established in the ordinance. The Board denied the application in a resolution adopted May 10, 1990. The Board found the negative criteria had not been met because "[t]he lot in question is at a high traffic intersection, used by fire, ambulance, and emergency vehicles, in close proximity to the Fire Department and Ambulance Corps. driveways, and a variance to allow new construction within ten feet of the Russell Avenue right-of-way cannot be granted without substantial detriment to the public good and public safety."

## II

On this appeal, the Mayor and Council of the Borough contend plaintiffs, as subsequent owners, were not entitled to inverse condemnation. They argue that the lot was zoned into uselessness before plaintiffs became the owners and that variance cases provide no assistance in deciding this inverse condemnation case. The Mayor and Council take the untenable position that although

the lot is useless to the plaintiffs based on proper denial of the hardship variance application, they are entitled to no relief, not even from the burden of paying taxes on the useless land which benefits the public. For the reasons which follow, we reject the extremely unreasonable contentions urged by appellants.

This case deals with an alleged taking by a zoning ordinance and therefore "takings doctrine dealing with zoning is particularly relevant." *Gardner v. New Jersey Pinelands Com'n,* 125 *N.J.* 193, 205, 593 *A.*2d 251 (1991). Generally, "takings analysis makes two fundamental demands of any zoning scheme: it must substantially advance legitimate state interests, and it cannot deny an owner all economically viable use of the land." *Ibid.;* citing *Agins v. Tiburon,* 447 *U.S.* 255, 260, 100 *S.Ct.* 2138, 2141, 65 *L.Ed.*2d 106, 112 (1980). *See also Bernardsville Quarry v. Bernardsville Borough,* 129 *N.J.* 221, 232–33, 608 *A.*2d 1377 (1992). Private property can be taken by government through regulatory measures that do not amount to physical occupation. *Id.* at 231, 608 *A.*2d 1377; *Littman v. Gimello,* 115 *N.J.* 154, 164, 557 *A.*2d 314 (1989), *cert. denied,* 493 *U.S.* 934, 110 *S.Ct.* 324, 107 *L.Ed.*2d 314 (1989); *Washington Market Enterprises v. Trenton,* 68 *N.J.* 107, 118, 343 *A.*2d 408 (1975). *See also Yee v. City of Escondido,* 503 *U.S.* ——, 112 *S.Ct.* 1522, 1525, 118 *L.Ed.*2d 153, 162 (1992). Regulatory takings are fact-sensitive, *Bernardsville Quarry, supra,* 129 *N.J.* at 232, 608 *A.*2d 1377, and the landowner has the burden of establishing that the regulations have destroyed all economically viable use of the property. *Klein v. New Jersey Dept. of Transp.,* 264 *N.J.Super.* 285, 294, 624 *A.*2d 618 (App.Div. 1993).

It is undisputed that the 1947 zoning ordinance substantially advances legitimate state interests. The ordinance has a 35 foot setback requirement for a corner lot. The lot is located across the street from the fire department and next door to the ambulance corps. The hardship variance application was denied because to grant it would cause substantial detriment to the public good. The correctness of that decision is no longer challenged. Unques-

tionably, regulation of the use of the lot advances the State's interest in promoting the common good. But as Justice Holmes noted more than seventy years ago, "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Pennsylvania Coal Co. v. Mahon*, 260 *U.S.* 393, 416, 43 *S.Ct.* 158, 160, 67 *L.Ed.* 322, 326 (1922).

### III

The Mayor and Council argue that plaintiffs' knowledge that the lot was undersized when they purchased it deprives them of the right to claim an administrative taking. As we noted above, the lot was undersized at the time the 1947 zoning ordinance was enacted. Since neither plaintiffs nor their predecessors in title created the undersized lot, there is no legitimate reason not to follow existing zoning law respecting hardship variance applications.

That law provides that when "neither the owner of the lot at the time of adoption of the zoning ordinance which made the lot undersized, nor a subsequent owner, did anything to create the [undersized lot] for which [a hardship] variance is sought, a right to relief possessed by the original owner passes to the successor in title. Such right is not lost simply because the succeeding owner bought or contracted to buy with knowledge of the lot-size restriction." *Harrington Glen, Inc. v. Municipal Bd. of Adj. Bor. Leonia*, 52 *N.J.* 22, 28, 243 *A.2d* 233 (1968); *Chirichello v. Zoning Bd. of Adj. Monmouth Beach*, 78 *N.J.* 544, 556–57, 397 *A.2d* 646 (1979); *Wilson v. Bor. of Mountainside*, 42 *N.J.* 426, 452–53, 201 *A.2d* 540 (1964); *Ketcherick v. Bor. of Mountain Lakes*, 256 *N.J.Super.* 647, 655, 607 *A.2d* 1039 (App.Div.1992). The viability of this legal principle was reaffirmed recently in *Urban v. Planning Bd. Bor. of Manasquan*, 124 *N.J.* 651, 656–57, 592 *A.2d* 240 (1991), where the Court stated "the status of land use does not turn on the status of ownership." *Accord, Nash v. Board of Adj. Morris Tp.*, 96 *N.J.* 97, 108, 474 *A.2d* 241 (1984).

■ We hold that plaintiffs stand in the shoes of their predecessors in title. This conclusion has been influenced substantially by the fact that even though the owners have not been able to make any beneficial use of the lot, they have been required to pay realty taxes. Both the Just Compensation Clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment, and *N.J. Const., Article I,* paragraph 20 guarantees are "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Matter of Plan for Orderly Withdrawal,* 129 *N.J.* 389, 414, 609 *A.2d* 1248 (1992), *cert. denied,* —— *U.S.* ——, 113 *S.Ct.* 1066, 122 *L.Ed.*2d 370 (1993), quoting from *Armstrong v. United States,* 364 *U.S.* 40, 49, 80 *S.Ct.* 1563, 1569, 4 *L.Ed.*2d 1554, 1561 (1960).

■ We are also persuaded that if a taking occurred, it occurred on January 22, 1992, when the Law Division affirmed the denial of the hardship variances. This is consistent with *N.J.S.A.* 20:3–30(c). Contrary to defendants' assertion, the taking could not have occurred upon enactment of the zoning ordinance in 1947. Although a hardship variance application was denied in 1967 and affirmed in 1968, the Board in 1990 did not rely upon *res judicata* in denying plaintiffs' application. The Budinicks did not seek inverse condemnation following the 1968 decision. Absent a decision denying a hardship variance that was binding upon plaintiffs, they had every right, even the duty, to first seek relief under the Municipal Land Use Law in effect at the time before they could claim inverse condemnation. Until the owner has exhausted all remedial measures, *Toll Brothers, Inc. v. Dept. of Envir. Pro.,* 242 *N.J.Super.* 519, 531–32, 577 *A.2d* 845 (App.Div.1990); *R.* 4:69–5, a landowner cannot meet the burden of proving that the ordinance deprived the owner of all economically viable use of the land. *See Nash, supra.* For that reason, the issue of whether inverse condemnation had occurred was not ripe for determination prior to January 22, 1992.

■ In view of the foregoing principles, on January 22, 1992, it can be said "the ordinance will have zoned their property into idleness. Denial of permission to build a home upon the lot deprives it of all productive or beneficial use." *Harrington Glen, supra,* 52 *N.J.* at 29, 243 *A.*2d 233. *See also Chirichello v. Zoning Bd. of Adj. Monmouth Beach, supra,* 78 *N.J.* at 557–58, 397 *A.*2d 646; *N.J.S.A.* 40:55D–70(c). Once the Board properly denied the hardship application, the ordinance at that point impaired to an impermissible degree the bundle of property rights held by the owners. *Gardner v. New Jersey Pinelands Com'n, supra,* 125 *N.J.* at 210–11, 593 *A.*2d 251.

### IV

We also reject defendants' contention that plaintiffs do not have a reasonable investment-backed expectation in the property, thereby depriving them of the right to inverse condemnation. It has been recognized that the extent to which a regulation interferes "with distinct investment backed expectations, are of course, relevant considerations." *Penn Central Transp. Co. v. City of New York,* 438 *U.S.* 104, 124, 98 *S.Ct.* 2646, 2658, 57 *L.Ed.*2d 631, 648 (1978), *reh'g denied,* 439 *U.S.* 883, 99 *S.Ct.* 226, 58 *L.Ed.*2d 198; *Matter of Plan for Orderly Withdrawal, supra,* 129 *N.J.* at 419, 609 *A.*2d 1248. But our research convinces us that this principle has been used in connection with determining whether a regulation has impermissibly placed such economic constraints on the property so that a compensable taking has occurred. Stated differently, it is used mostly, if not exclusively, in deciding whether the profitability of the property has been so drastically reduced by a regulation that a compensable taking has occurred. *See Bernardsville Quarry, supra,* 129 *N.J.* at 240, 608 *A.*2d 1377; *Matter of Plan for Orderly Withdrawal, supra,* 129 *N.J.* at 419, 609 *A.*2d 1248; *Gardner v. New Jersey Pinelands Com'n, supra,* 125 *N.J.* at 205, 593 *A.*2d 251; *Littman v. Gimello, supra,* 115 *N.J.* at 164–65, 557 *A.*2d 314.

■ In contrast, the present case deals with a regulation which deprived residential property owners of all beneficial eco-

nomic use after denial of the hardship variance. In such circumstances, the regulation eliminates all benefits while leaving all burdens in tact rather than simply adjusting economic benefits and burdens. *See Gardner, supra,* 125 *N.J.* at 205, 593 *A.*2d 251. Support for this position is found in *Nash v. Bd. of Adj. Morris Tp., supra,* 96 *N.J.* at 108, 474 *A.*2d 241, which instructs that a hardship variance under *N.J.S.A.* 40:55D–70c does not refer to economic or financial loss. Where the owner or predecessor in title has not created the hardship, the focus is upon the property and not the owner. *Id.* at 108–09, 474 *A.*2d 241. This is a confiscatory hardship variance case because the denial of the variance means no effective use can be made of the property. Even if a reasonable investment-backed expectation is required in an inverse condemnation case based on the denial of a confiscatory hardship variance application, plaintiffs have sustained their burden of proof on that issue. Plaintiffs paid $100,000 for the two properties, spent about $10,000 in improvements to the house and sold it for $110,000. Since plaintiffs have not yet realized any profit from the investment, we find there remains an investment-backed expectation in Lot 2 sufficient to support a claim for a compensable taking.

The Mayor and Council have taken the unreasonable position that the Borough does not want the proposed single family house built on Lot 2 because it would cause substantial detriment to the public's interest and safety, but the landowners should nonetheless continue to pay realty taxes on the lot. It is undisputed that the proposed house would not only fit on the lot, but it would occupy only thirty-six percent of the land, which is eleven percent above the maximum coverage permitted. The objective of providing good government without compromising justice, in our view, would have been served better if appellants had urged the Law Division judge to remand the matter to the Board with direction that the confiscatory hardship variance application be granted. Because the propriety of denying the variance application is not before us, we have addressed only the inverse condemnation claim.

The Board's failure to grant the confiscatory hardship variance means "the ordinance will have zoned [the lot] into

idleness. Denial of permission to build a home upon the lot deprives it of all productive or beneficial use [, since no other use is permitted.] The only distinction between such zoning restriction and an actual taking by the municipality is that the restriction leaves the owner with the burden of paying the taxes on the property, while the outright taking relieves him of that burden." *Harrington Glen, Inc. v. Board of Adj. of Leonia, supra,* 52 *N.J.* at 29, 243 *A.2d* 233. When the property is deprived of all beneficial use to the owner, the property has been confiscated, and "an exercise of eminent domain is called for and compensation must be paid." *Id.* at 33, 243 *A.2d* 233. *See Lucas v. South Carolina Coastal Council,* 505 *U.S.* ——, 112 *S.Ct.* 2886, 120 *L.Ed.2d* 798, 813 (1992); *Pennsylvania Coal Co. v. Mahon, supra,* 260 *U.S.* at 413, 43 *S.Ct.* at 159, 67 *L.Ed.* at 325. In that way, "all the taxpayers in the municipality share the economic burden of achieving the intent and purpose of the zoning scheme." *Commons v. Westwood Zoning Bd. of Adj.,* 81 *N.J.* 597, 607, 410 *A.2d* 1138 (1980). It is highly significant that the Board denied the hardship variance substantially because granting it would "be detrimental to public safety and the public interest."

We hold that all issues raised by defendants are without merit. We affirm the judgment for inverse condemnation.[2]

---

[2] We have not discussed the reasonableness of offers made to plaintiffs to purchase the lot because that relates to the issue of hardship variances sought. The propriety of the Board's denial of that application has not been raised in this appeal. *See Davis Enterprises v. Karpf,* 105 *N.J.* 476, 494, 523 *A.2d* 137 (1987). Nor have we discussed valuation of the lot because that issue has been submitted to condemnation Commissioners. But the preferred method of valuation is to assume that necessary variances were granted to permit construction of a single family home on the lot. *United States v. Causby,* 328 *U.S.* 256, 261, 66 *S.Ct.* 1062, 1065, 90 *L.Ed.* 1206, 1210 (1946); *Commons v. Westwood Bd. of Adj., supra,* 81 *N.J.* at 608, 410 *A.2d* 1138.