686 A.2d 364

STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANS-
PORTATION, PLAINTIFF–RESPONDENT, v. BAYVIEW ASSO-
CIATES, A PARTNERSHIP OF NEW JERSEY, DEFENDANT–
APPELLANT, AND NATIONAL WESTMINSTER BANK, N.J., A
NATIONAL BANKING ASSOCIATION, PORT JERSEY DISTRI-
BUTION SERVICES, A CORPORATION OF NEW JERSEY, CITY
OF BAYONNE, IN THE COUNTY OF HUDSON, A MUNICIPAL
CORPORATION OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued November 18, 1996—Decided December 26, 1996.

Before Judges PETRELLA, LANDAU and KIMMELMAN.

*John J. Curley* argued the cause for appellant (*Curley & Sciarra,* attorneys; *Mr. Curley,* of counsel; *Jacqueline Middleton,* on the brief).

*Maureen Hinchliffe Bonney,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Bonney,* on the brief).

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

Defendant Bayview Associates (Bayview) appeals from a summary judgment entered in the Law Division which permitted plaintiff to file an amended complaint. The trial court ruled that plaintiff had properly exercised its right of eminent domain in connection with the widening of Route 169 in Bayonne, however the appointment of condemnation commissioners was withheld pending the resolution of this appeal.

The operative facts are as follows. Bayview owns a large wholesale distribution warehouse located at the intersection of Route 169 and Pulaski Street in Bayonne. The warehouse is a rail/truck terminal building, ten acres in size, on a twenty-one acre lot. The building was specially designed to receive freight by rail and to redistribute the freight by truck. On its primary level, the building has twenty-five truck doors and seven rail doors which are serviced by two separate rail spurs. One rail spur provides rail service to the five rail doors located along the northwesterly side of the building which are used in conjunction with fifteen truck doors along the northeast side. The other rail spur provides rail service to the remaining two rail doors situated along the southwesterly side of the building which are used in conjunction with ten truck doors along the southeast side. As of the date of the taking, Conrail was providing active and frequent rail service along both spur tracks.

Plaintiff's plan to widen Route 169 requires moving certain Conrail tracks which will directly affect Bayview's building. The railroad spur serving the two railway bay doors on the southwesterly side of the building, feeding the ten southeasterly truck doors, will no longer be connected to Conrail's main line as a result of the subject condemnation of Conrail's property. The other railroad spur which services the five railway bay doors on the northwesterly side of the building, feeding the fifteen northwesterly track doors, will still be connected with the Conrail main lines and will remain functional.

In sum, while none of the seven railway bay doors will be physically taken, the off-site condemnation of a portion of Conrail's right of way will terminate active rail service to two of the seven railway bay doors. It is argued that, as a result, the building will lose approximately twenty-eight percent of its capacity to receive railroad freight.

The only land being taken from Bayview consists of a small triangular parcel of vacant land, less than one acre in size, which is to be used in connection with the Pulaski Street corner improvements. The taking of that small parcel does not affect the outcome of this appeal.

Prior to the filing of the condemnation, the parties were engaged in negotiations during which it was assumed that plaintiff would have the responsibility for curing the impairment in the use of the building caused by the elimination of the southwesterly siding and consequent inutility of two railway doors. It was contemplated that the building would require physical alteration to cure the effect the off-site condemnation would have upon the facility.

Plaintiff offered Bayview $10,600 for the small triangular parcel actually being condemned and damages of $113,600, the estimated cost of alterations to the building needed to change the location of the two railway bay doors which no longer could be used. Bayview estimated it would cost $492,799 for modifications to the building occasioned by the need to relocate the two railway bay

doors. When the parties could not agree on the damages figure, plaintiff, on May 22, 1995, filed a complaint for condemnation, and also filed a declaration of taking. The sum of $124,200 was deposited as just compensation with the Clerk of the Court to cover (1) the value of the small triangular piece of property being taken; and (2) the cost to cure the impairment of the building together with the right to enter upon Bayview's land for the purpose of relocating the railroad spur. The declaration of taking was recorded in the Office of the Register of Hudson County.

Eighteen days later, on June 9, 1995, plaintiff filed an amendment to the complaint reducing the estimated just compensation to $10,600 by eliminating $113,600 of its original estimate of just compensation which was related to the projected cost to cure the impairment caused to the building by the Conrail taking. The amendment to the complaint was motivated by plaintiff's determination that, since there was no actual taking of Bayview's land in connection with the curtailment of service to one of the railway sidings, it did not have to fund the cost to cure the damages resulting from the curtailment of such service.

Bayview moved to dismiss the amended complaint. The trial court rejected Bayview's claim and upheld plaintiff's revision of its estimate of compensable damages ruling summarily that the beneficial use of Bayview's property was not destroyed by the taking of adjoining Conrail property which resulted in the elimination of one of the two railway sidings serving the warehouse building.

On appeal, Bayview asserts that (1) its claim for compensation for damages to its building by reason of the elimination of service to a railroad spur as a result of the off-site taking of part of Conrail's right of way should be submitted to condemnation commissioners, and (2) plaintiff cannot divest itself, without Bayview's consent, of the right of way already taken in Bayview's property by the filing and recording of the declaration of taking.

At issue is whether this case is controlled, as the trial judge concluded, by this court's holding in *Klein v. State of N.J., Dep't of Transp.*, 264 *N.J.Super.* 285, 624 *A.2d* 618 (App.Div.1993), *certif.*

*denied,* 134 *N.J.* 481, 634 *A.*2d 528 (1993). Both parties have varying interpretations of *Klein.*

*Klein* was an inverse condemnation case brought by the owner of a building adjoining Route 169 in Bayonne. When the building was constructed in 1971, railroad siding tracks were installed and were utilized through a sidetrack agreement with the then Lehigh Valley Railroad (Lehigh). Lehigh terminated the sidetrack agreement in 1976 when Lehigh was taken over and replaced by Conrail. After the Conrail takeover, no siding track service was provided to the building and the owner sought none. Sometime thereafter, or perhaps even earlier, the exact date does not appear, the owner covered over the non-functioning siding tracks with crushed stone. In 1985, in connection with the same Route 169 widening project, as here involved, the State condemned a portion of Conrail's right of way to which the siding track had been connected and offered the owner of the building $4500 for the taking of the right to operate and utilize the railroad spur. When the owner demanded $2,000,000 in compensation, the negotiations terminated.

An inverse condemnation action was then instituted by the owner. This court upheld the trial court's dismissal of the inverse condemnation claim because it was undisputed that Conrail had years earlier abandoned its main feeder line which connected to the owner's railroad spur and could not have, and did not, provide rail service to the building. *Klein, supra,* 264 *N.J.Super.* at 293–94, 624 *A.*2d 618. The fact that the spur had been covered over with crushed stone lent credence to the claim of abandonment. We concluded that because the owner was unable to prove that an existing right of access had been eliminated, its claim must fail. Since the side track service had been abandoned years earlier, it could not be proven that the Conrail taking resulted in a total or substantial destruction of the beneficial use of the building. *Id.* at 295, 624 *A.*2d 618.

Applied to this case, the trial judge viewed *Klein* as standing for the proposition that no compensable taking results to an affected

third-party when the State condemns an existing railway right of way and the right of access, by virtue of a tangential spur line on the third-party's adjoining property, is destroyed. Our holding in *Klein* was not that broad. We recognized that in the absence of a direct taking, minor incidental inconveniences or annoyances may not be compensable but, nevertheless, an off-site taking may warrant compensation when the effect causes a substantial destruction of the beneficial use of adjoining property. *Id.* at 294–95, 624 *A.*2d 618.

Here, Bayview, unlike the owner in *Klein*, enjoyed ongoing, continuous, and current Conrail service to its building over the railroad sidetracks although a written service agreement could not be found. It does appear that Conrail service over both sidetracks would have continued unabated but for plaintiff's taking. Moreover, due to the ongoing service, Bayview's sidetracks had not been covered over with crushed stone and Conrail had not abandoned service. Bayview's sidetracks were completely operational. As a result of the off-site Conrail taking, a fact issue arose as to whether and, if so, the extent to which the beneficial use of Bayview's building was impaired by the elimination of the active railroad spur serving the two railroad bay doors on the southwesterly side of the building.

As has been noted, Bayview's building was specifically designed to receive freight by rail and to redistribute such freight by truck. Consequently, it must be determined, after a factual hearing, whether the termination of partial rail service made a significant portion of the building useless for the handling of freight in the manner for which the building was designed such that a substantial destruction of the beneficial use of the building occurred. *See Klein, supra,* 264 *N.J.Super.* at 294, 624 *A.*2d 618 (citing *Washington Mkt. Enter., Inc. v. Trenton,* 68 *N.J.* 107, 123, 343 *A.*2d 408 (1975)).

Since plaintiff had originally commissioned its appraisal expert to detail the cost to restore Bayview's building to the functional

utility it enjoyed before the Conrail taking, it may not be argued that Bayview's damage claim is speculative.

Although it determined that the condemnation of the spur was not compensable to Bayview, significantly, the trial court observed that:

In order to effectively utilize the entire building the landowner will be put to the expense of making certain reconfigurations in the building at cost [sic] which have been variously estimated as high as—or as much as $400,000.00.

The trial court erred in concluding, without a factual hearing, that there was no evidence that the "warehouse designed to handle rail to truck transfers has been either totally or substantially destroyed."

In light of the views we have expressed, this matter is reversed and remanded to the Law Division for a factual hearing and for the appointment of commissioners, if required, with respect to the causes of action alleged in plaintiff's original complaint and declaration of taking. We do not retain jurisdiction.