**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0572-19T1

MAXX-ROXX, LLC,

     Plaintiff-Appellant,

v.

THE PLANNING BOARD OF
THE CITY OF MARGATE,
NEW JERSEY,

     Defendant-Respondent.

and

ALLISON LAND and RON ABEL,

     Defendants/Intervenors-
     Respondents/Cross-Appellants.

_____

Argued October 14, 2020 – Decided November 30, 2020

Before Judges Fisher, Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1462-18.

Guliet D. Hirsch argued the cause for appellant (Archer & Greiner PC, attorneys; Guliet D. Hirsch, on the briefs).

Elias T. Manos argued the cause for respondent.

Robert S. Baranowski, Jr. argued the cause for intervenors-respondents/cross-appellants (Hyland Levin Shapiro LLP, attorneys; Robert S. Baranowski, Jr. and Megan Knowlton Balne, on the briefs).

PER CURIAM

This appeal arises out of an application seeking zoning variances so a residential home could be built on an undersized lot. Plaintiff Maxx-Roxx, LLC (M-R) appeals from an August 26, 2019 order dismissing its complaint in lieu of prerogative writs, which challenged the denial of its application for zoning variances by defendant the Planning Board of the City of Margate (Board).[1] Defendants/intervenors Allison Land and Ron Abel, who own properties adjacent to the lot plaintiff sought to develop, cross-appeal from the provision

---

[1] The order under review expressly disposes of the first two counts of plaintiff's three-count complaint and declares itself to be a "final order" despite the absence of a disposition of the third count, which asserts an inverse condemnation claim. As we explain in Section II of this opinion, the judge should have dismissed the third count because the proper defendant was not joined and the claim was not ripe. Accordingly, we have deemed the third count to have been dismissed and we have exercised our discretion to consider the merits of the appeal.

in the order that upheld the Board's determination that plaintiff's application was not barred under principles of res judicata.

We discern no error in the Board's ruling on the issue of res judicata. We also discern no taint in the proceedings before the Board and nothing arbitrary, capricious, or unreasonable in its denial of the application. Accordingly, we affirm the order in all respects.

I.

M-R owns a waterfront lot in a residential neighborhood in Margate (the Property). The Property is 30 feet wide and 100 feet deep, with an area of 3000 square feet. It is an undersized lot located in a residential zoning district (designated S-40), which requires lots to have 50 feet of width and 4000 square feet of area.

The boundaries of the Property were fixed sometime around 1914, and there has never been a residential structure or building on the Property. It has a bulkhead, which needs repair, two boat slips, and a concrete driveway. The Property has been undersized since the 1940s, when Margate adopted a zoning ordinance requiring minimum widths and lot size.

M-R purchased the Property sometime after 1979. Public records reflect that M-R initially acquired a 50% ownership interest in the Property for $1 and

3

later acquired the remaining 50% ownership in 2015 for $75,000. Two of the members of M-R, Andrew and Elizabeth Feriozzi, applied to the Board for zoning variances from the minimum lot area and width requirements.[2] The Feriozzis planned to build a residential home that would be nineteen feet wide, forty feet deep, and forty-three feet high. Before the Board, the attorney representing the Feriozzis stated that the application was "based solely on hardship" as a "C-1 variance."

As part of the process, the Feriozzis sent letters to Land and Abel, offering to buy land from them to bring the Property into conformance or sell them the Property. Land made an offer to buy the Property for $150,000. M-R rejected this offer and counteroffered to sell the Property for $600,000. In response, Land increased her offer to $200,000. M-R did not accept Land's counteroffer.

On March 22, 2018, the Board conducted a public hearing on the variance application. At the beginning of the hearing, Land and Abel, who were represented by an attorney, requested that the Board reject the application based on a 1979 application that they contended precluded the Feriozzis' application under principles of res judicata. In 1979, the Board had considered, but denied,

_____

[2] At the time of the application, M-R had three members: the Feriozzis and John Scott Abbott, who was the Margate Solicitor.

an application by a predecessor owner of the Property that sought variances to build a residential home. The Board found that res judicata did not apply because the new application was not substantially similar and conditions around the Property had substantially changed. The Board then proceeded to hear the merits of the application.

In support of the application, the Board heard testimony from Andrew Feriozzi, Jon Barnhart, a professional planner and engineer hired by the Feriozzis, and Robert Keijdan, the applicants' architect. In opposition, the Board heard testimony from Land, Abel, other members of the public, and Creigh Rahenkamp, a professional planner retained by Land and Abel.

In summary, Feriozzi testified that he planned to build a single-family home on the Property. Keijdan described the proposed dwelling. Barnhart offered opinions on the positive and negative criteria of the variance application. Addressing the positive criteria, Barnhart asserted that unless the variances were granted, the Property would have no practical use. Concerning the negative criteria, Barnhart testified that the lot width and area variances could be granted without substantial detriment to the public good and without substantially impairing the zoning plan or ordinance. In that regard, Barnhart contended that the proposed home, although on a small lot, was in character with the

5

surrounding homes. He also pointed out that there were several undersized lots with homes in the neighborhood, and that the Board had approved variances for some of those homes.

In opposition, Land testified about her offers to purchase the Property and submitted two appraisals: one that appraised the Property in its current condition for $150,000, and another that appraised the Property for $275,000, assuming it received variances to build a home. In response, the Feriozzis argued that they had obtained an appraisal that valued the Property at $600,000, assuming that the variances were granted.

Land and Abel also testified that the proposed home would impair the neighborhood's quality of life and was detrimental to the surrounding homes. Several other residents also objected, contending that the proposed dwelling was not in character with the homes in the neighborhood.

Rahenkamp, the professional planner retained by Land and Abel, opined that there was no undue hardship because the Property was improved with a bulkhead and boat slips and could be used as a marina. He also contended that the proposed dwelling would have negative impacts to the neighborhood, and that it was inconsistent with the open light and air called for in the Margate zoning plan.

A-0572-19T1

Following the close of the testimony, the chair of the Board, Richard Patterson, voiced his opposition to the application. He described the Property as "grossly understated" and distinguished it from variance-approvals given to other undersized lots. Patterson also referenced a photograph of the Property that another Board member had sent to him.

Several Board members made comments on the application when voting. One Board member pointed out that the applicants knew the lot was undersized with no dwelling when they purchased the Property. Accordingly, the Board member questioned how the applicants could claim a hardship. The Board ultimately voted six to one to deny the application.[3]

On April 26, 2018, the Board memorialized its denial in a written resolution. The resolution stated that the applicants had not established undue hardship as required by N.J.S.A. 40:55D-7(c)(1). Referencing the conflicting testimony and appraisals, the resolution stated that if the variances were given, they would be substantially detrimental to the public good and contrary to the intent and purpose of the zoning plan. The resolution also noted that the applicants were "at least on constructive notice of a prior application in 1979,"

---

[3] Several Board members recused themselves because of their relationship with the applicants and the third member of M-R, the Margate solicitor.

and that the bulkhead and boat slip improvements provided "some utility" to the Property.

In June 2018, M-R filed a complaint in lieu of prerogative writs. The complaint named the Board as defendant and sought three forms of relief: (1) reversal of the Board's denial of the application; or, alternatively, (2) remand for a new hearing because of alleged improper actions by Board members; and (3) an order finding the Property to be "effectively condemned" and preserving M-R's right to pursue an inverse condemnation claim against the City of Margate. Land and Abel intervened and asserted a counterclaim, contending that the application was barred by the doctrine of res judicata.

The trial court thereafter allowed discovery. In response to interrogatories, the Board acknowledged that all the members who voted on the application had visited the Property. Member Craig Palmisano also disclosed that he had taken a photograph of the Property and sent that picture to Patterson. Patterson acknowledged that his written notes had been prepared before the hearing using the application and a report by Margate's zoning officer. All Board members certified that they had not discussed the merits of the application before the hearing.

A-0572-19T1

The trial court heard oral argument on July 10, 2019. During those arguments, the court stated that the inverse condemnation action needed to include the City. The court also reminded counsel for M-R that it had previously pointed out the need to join the City at a case management conference. Counsel for M-R acknowledged the court's points and did not make any argument for an order preserving a right to pursue such a claim.

On August 23, 2019, the trial court issued a comprehensive oral opinion that it read into the record. First, the court upheld the Board's determination that principles of res judicata did not bar the application. It affirmed the Board's determination that there were significant differences between plaintiff's application and the 1979 application, and that conditions around the Property had significantly changed since 1979.

Next, the trial court found that there was no basis to overturn the Board's decision because of actions of Board members. The court found that Patterson's comments did not taint the process because those comments were made after all the evidence had been presented. The court also reasoned that it was not improper for Patterson to prepare notes ahead of time. In addition, the court rejected M-R's claim that the photograph sent to Patterson impaired the hearing. The court found that Patterson disclosed that he had seen a photograph and there

9

was no showing that Patterson or other Board members improperly considered the photograph.

Similarly, the court found that there was no ground for reversing the Board because Board members visited the Property but did not disclose those visits at the hearing. Noting that the better practice would have been to disclose the site visits, the court found that these visits did not unfairly affect the process because there was no evidence that Board members based their decisions on the site visits. Instead, the court found that the Board members made their determinations based on the evidence presented at the hearing.

Addressing the substance of M-R's challenge, the court found nothing arbitrary, capricious, or unreasonable in the Board's denial of the application. The court analyzed the Board's findings on the positive and negative criteria and found that there was substantial evidence in the record to support the Board's determinations. Accordingly, the trial court affirmed the Board's denial of the application.

On August 26, 2019, the trial court issued an order memorializing its rulings. M-R appeals from that order and Land and Abel cross-appeal.

II.

We begin with our analysis of M-R's arguments that the trial court erred in failing to address and bifurcate its inverse condemnation claim. We start with this issue because if the inverse condemnation claim had been properly presented and had not been resolved, the August 26, 2019 order would not be a final order and the rest of the appeal would be interlocutory. We hold that the inverse condemnation claim was never properly asserted and was not ripe.

Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." United States v. Clarke, 445 U.S. 253, 257 (1980) (quoting Donald G. Hagman, Urban Planning and Land Development Control Law 328 (1971)); see also Raab v. Borough of Avalon, 392 N.J. Super. 499, 509 (App. Div. 2007). The plaintiff is entitled to compensation if it is "deprived of all or substantially all of the beneficial use of the totality of [the] property[.]" Greenway Dev. Co., Inc. v. Borough of Paramus, 163 N.J. 546, 553 (2000) (quoting Pinkowski v. Twp. of Montclair, 299 N.J. Super. 557, 575 (App. Div. 1997)).

11

The proper defendant in an inverse condemnation action is the governmental entity effecting the taking.  See Klumpp v. Borough of Avalon, 202 N.J. 390, 404 (2010) (citing N.J. Const. art. IV, § 6, ¶ 3) (noting any agency "empowered to take or otherwise acquire private property" must provide just compensation for such taking); see also Twp. of N. Brunswick v. Zoning Bd. of Adjustment, 378 N.J. Super. 485, 490 (App. Div. 2005) (citations omitted) (recognizing municipal governing bodies adopt zoning ordinances and impose limitations, whereas municipal boards provide relief where warranted). Moreover, to assert an inverse condemnation action, the landowner must exhaust all remedial measures, including seeking variances.  Moroney v. Mayor & Council, 268 N.J. Super. 458, 465 (App. Div. 1993); see also United Sav. Bank v. State, 360 N.J. Super. 520, 525 (App. Div. 2003) (holding failure to pursue administrative procedures prevented inverse condemnation claim from ripening); see generally R. 4:69-5.  Until the variances are denied, the landowner is not able to argue that it has been deprived of all economically viable use of the property.  Moroney, 268 N.J. Super. at 465.  Furthermore, the landowner in an inverse condemnation action must prove that the governing zoning ordinance deprived the owner of all economically viable use of the land.  Id. at 463 (citing

Klein v. N.J. Dep't of Transp., 264 N.J. Super. 285, 294 (App. Div. 1993)); see also Klumpp, 202 N.J. at 405.

M-R never joined the City as a defendant. It was the City of Margate that enacted the governing zoning ordinances, making the City a necessary party. Accordingly, M-R never properly asserted an inverse condemnation claim. In addition, the inverse condemnation claim will not become ripe until M-R has exhausted all appeals of the order affirming the dismissal of its prerogative writ action, which in turn affirmed the Board's denial of its variance application.

Finally, the current record does not establish that M-R has shown that the zoning ordinance deprived it of all economically viable uses of the Property. There are factual disputes concerning the viable use of the existing bulkhead and boat slips on the Property. There are also factual disputes concerning the appraised value of the Property and whether Land's offer to buy the Property for $200,000 was a reasonable offer.

Consequently, M-R did not assert a ripe inverse condemnation claim. Although that claim was not expressly addressed in the August 26, 2019 order, we deem the order to have dismissed the claim without prejudice as not properly asserted.

A-0572-19T1

III.

Next, we address the cross-appeal of Land and Abel because if the application should have been barred on principles of res judicata, M-R's appeal would be moot. We affirm the trial court's determination that the Board correctly found that the Feriozzis' variance application was not barred by res judicata.

An adjudicative decision of an administrative agency, such as a planning board, "should be accorded the same finality that is accorded the judgment of a court." Bressman v. Gash, 131 N.J. 517, 526 (1993) (quoting Restatement (Second) of Judgments § 83 cmt. b (Am. Law Inst. 1982)). Res judicata is designed to support finality of decisions and prevent re-litigation of issues that have already been decided. See id. at 527.

To bar a variance application to a planning board under the doctrine of res judicata, the party asserting the doctrine must "show that the second application is substantially similar to the first, both as to the application itself and the circumstances of the property involved." Russell v. Bd. of Adjustment, 31 N.J. 58, 65 (1959). "[C]ourts should not preclude a board of adjustment from considering a second application for a variance if the application contains

changes that are 'sufficient.'" Bressman, 131 N.J. at 527 (citing Russell, 31 N.J. at 66).

The planning board has the authority to determine the sufficiency of a change. Ibid. Courts review such a determination on a limited basis and will reverse only if that determination is shown to be unreasonable, arbitrary, or capricious. Ibid. Accordingly, Land and Abel, as opponents asserting the application was barred by the doctrine, were required to demonstrate the Board could not have reasonably found substantial changes in M-R's application or conditions affecting the Property from the 1979 application. See Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 39-40 (2013). This requirement is not satisfied by a showing that a different conclusion could have been reached. Bressman, 131 N.J. at 527.

In 1979, a predecessor owner of the Property sought variances to construct a home. The Board denied that application. In considering the Feriozzis' variance application, the Board found that there were substantial differences from the variances sought by the applicant in 1979. The Board also found that there were substantial changes in the area surrounding the Property that occurred in the thirty-nine years between 1979 and 2018, when the application was heard.

Those findings are all supported by substantial credible evidence in the record. Accordingly, we discern no error of law or abuse of discretion in the Board's determination that the Feriozzis' application was not barred by res judicata.

IV.

M-R makes numerous arguments in challenging the trial court's affirmance of the Board's denial of its application. Those arguments really boil down to two primary assertions: (1) the hearing before the Board was impaired or tainted by improper conduct by Board members; and (2) the Board's denial was arbitrary, capricious, and unreasonable.

Zoning and planning board decisions "enjoy a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002)). Consequently, "courts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58-59 (1999).

The party challenging the action of a zoning or planning board must demonstrate that the board acted arbitrarily, capriciously, or unreasonably. Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 233 N.J. 546, 558 (2018) (quoting Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015)); Ten Stary Dom P'ship, 216 N.J. at 33 (citing Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998)). "A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of a grant or denial of a variance are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom P'ship, 216 N.J. at 33 (first citing Smart SMR of N.Y., Inc., 152 N.J. at 327; and then citing Leimann v. Bd. of Adjustment, 9 N.J. 336, 340 (1952)). "Even when doubt is entertained as to the wisdom of the [board's] action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion . . . ." Kramer v. Bd. of Adjustment, 45 N.J. 268, 296-97 (1965).

A.    The Alleged Taints

M-R contends that the proceedings before the Board were impaired because (1) members visited the Property and did not disclose those site visits at the hearing; (2) the chair had pre-judged the application before hearing the

evidence; and (3) the chair had received and reviewed a photograph of the Property that was not part of the record. M-R goes on to argue that these improper actions deprived it of due process, and we should reverse for a new hearing. We disagree.

Municipal boards are quasi-judicial in nature. Id. at 282. Accordingly, boards are required to rely on facts in the record when rendering decisions. Id. at 284. Unlike a court, however, boards are not expected to function in a vacuum and may consider their knowledge of their community. Ibid.; Smith v. Fair Haven Zoning Bd. of Adjustment, 335 N.J. Super. 111, 119 (App. Div. 2000); Baghdikian v. Bd. of Adjustment, 247 N.J. Super. 45, 50 (App. Div. 1991).

"It is firmly settled that a board may and indeed is expected to bring to bear in its deliberations the general knowledge of the local conditions and experiences of its individual members." Baghdikian, 247 N.J. Super. at 49-50 (citing Reinauer Realty Corp. v. Nucera, 59 N.J. Super. 189, 201 (App. Div. 1960)). That knowledge, however, must generally be placed on the record. Id. at 50. Accordingly, if board members conduct site visits or if they review something material to their determination, they generally must give notice and disclose the visit or information they are considering on the record. Smith, 335

N.J. Super. at 119. That disclosure affords applicants the opportunity to address what the Board is considering. Ibid.; Baghdikian, 247 N.J. Super. at 50-51.

M-R failed to establish that the Board members' actions impaired the proceedings or prejudiced M-R. We agree with the trial court that the better practice would have been for the members to have disclosed that they had visited the site. Nevertheless, all the voting members certify that they did not rely on their site visits in voting on the application. Importantly, there was really no dispute as to the conditions of the Property. It was a small lot with a dilapidated bulkhead, two boat slips, and a concrete driveway. The Feriozzis' application included multiple photographs of the Property. Therefore, there was no showing that any voting Board member saw something during the site visits that was not fully explored at the hearing.

We also discern no impairment or taint from the comments made by the chair. The chair acknowledged that he read from notes he had prepared before the hearing. Nevertheless, his comments were made after all the evidence had been submitted at the hearing. M-R failed to show that the chair had pre-judged the matter merely by preparing notes ahead of time. Likewise, M-R showed no prejudice from the chair reviewing a photograph that was sent to him by another Board member.

19

B.      The Merits of the Board's Decision

The Legislature has delegated to municipalities the power to regulate local land use through the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163.  An application for a variance from a bulk or dimensional provision of a zoning ordinance is governed by N.J.S.A. 40:55D-70(c).  Subsection 70(c)(1) permits a variance when strict application of the zoning ordinance would create exceptional practical difficulties or exceptional hardship because of the characteristics of the subject property.  N.J.S.A. 40:55D-70(c)(1).  "Undue hardship refers solely to the particular physical condition of the property, not personal hardship to its owner, financial or otherwise."  Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 590 (2005).

An applicant who pursues a variance under N.J.S.A. 40:55D-70(c)(1) must establish that the conditions of the property present a hardship and efforts have been made to bring the property into compliance with the ordinance.  Ten Stary Dom P'ship, 216 N.J. at 29.  "Those efforts may include attempts to acquire additional land or offers to sell the nonconforming lot to adjacent property owners."  Id. at 30 (citing Jock, 184 N.J. at 594).  Establishing undue hardship constitutes a showing of the "positive" criteria for a (c)(1) variance.  Id. at 29-30.

In addition, an applicant for a (c)(1) variance must satisfy the negative criteria. Id. at 30 (citing Nash v. Bd. of Adjustment, 96 N.J. 97, 102 (1984)). The negative criteria require proof that the variance will not result in a substantial detriment to the public good or substantially impair the purpose of the zoning plan. Ibid.

The Board rejected the Feriozzis' variance application, finding that neither the positive nor negative criteria were satisfied. Addressing the positive criteria, the Board found that there was no undue hardship because Land had made a fair market value offer to purchase the Property. The Board also found that denial of the variance would not render the Property totally useless because it had a bulkhead and boat slips. While M-R vigorously disputes those findings, they are supported by substantial credible evidence in the record, and we discern nothing arbitrary, capricious, or unreasonable in the Board's decision.

The Board also held that the Feriozzis had not satisfied the negative criteria. In so doing, the Board accepted the testimony of Land, Abel, and other residents who objected to the variances because the proposed dwelling would be out of character with the rest of the neighborhood. The Board also found that granting the variances would substantially impair the purpose of the zoning plan. The Board compared the proposed dwelling to surrounding homes. The Board

21

also cited traditional considerations such as preservation of light, air, and open space. Id. at 32. The Board's findings in that regard reflect concerns raised in the testimony presented at the public hearing. That part of the Board's decision is also not arbitrary, capricious, or unreasonable.

In challenging the Board's decision on its merits, M-R contends that the Board improperly denied the variances because it found that the Feriozzis' hardship was self-imposed. M-R also contends that the Board used an incorrect legal standard.

The knowing purchase of a vacant, undersized lot does not constitute self-created hardship. Jock, 184 N.J. at 590. Self-imposed hardship requires "an affirmative action by the landowner or a predecessor in title that brings an otherwise conforming property into non-conformity." Id. at 591 (citing Barnes Land Corp. v. Bd. of Adjustment, 174 N.J. Super. 301, 304 (App. Div. 1980)). The Board's discussions at the hearing, as well as its resolution, reflect it found the absence of a hardship, rather than self-imposed hardship.

The Board's resolution does not explicitly reference a self-imposed hardship. Instead, it includes a finding that the applicants "were at least on constructive notice of a prior application in 1979." A full review of the record

and the memorializing resolution, however, establishes that the Board did not base its decision solely on self-imposed hardship.

We also reject M-R's contention that the Board used an incorrect legal standard. Before the Board and the trial court, M-R argued that the Property was vacant, and it sought variances under subsection (c)(1). M-R now contends that the Property was not vacant, and the Board's analysis was flawed because the land was improved and, accordingly, a different standard should have been applied.

Appellate courts generally refrain from considering issues raised for the first time on appeal "unless they are jurisdictional in nature or substantially implicate public interest." State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006) (first citing Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); and then citing Ferraro v. Demetrakis, 167 N.J. Super. 429, 431-32 (App. Div. 1979)). This is particularly true where, as here, the opportunity was readily available to present the issue to the trial court. See Monek v. Borough of S. River, 354 N.J. Super. 442, 456 (App. Div. 2002). Accordingly, we decline to consider this new argument.

While we decline to consider this issue, we note that whether the Board analyzed M-R's application using an occupied or vacant lot analysis, there are

alternative grounds to affirm the denial of the (c)(1) variances. Our Supreme Court has held that where an undersized lot contains a structure, the willingness of adjoining property owners to purchase the lot for fair market value does not preclude a hardship finding. Davis Enters. v. Karpf, 105 N.J. 476, 484 (1987). Nevertheless, "[u]nderlying the request for a hardship variance is the premise that without such relief the property will be zoned into inutility." Id. at 481 (citing Commons v. Westwood Zoning Bd. of Adjustment, 81 N.J. 597, 607 (1980)).

Here, the Board found the Feriozzis failed to establish hardship, the positive criteria, not only because of Land's offer to purchase the Property, but also because the Property in its current condition had some utility. Moreover, the Board found the Feriozzis did not establish the negative criteria, which also precludes (c)(1) variance relief. See Ten Stary Dom P'ship, 216 N.J. at 30. As already noted, we find no error in the Board's determinations, which are supported by substantial credible evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

24

A-0572-19T1